Points decided.

[No. 1035.]

# ELLEN E. HIXON, RESPONDENT, v. ROBERT F. PIXLEY, APPELLANT.

PARTNERSHIP—CONVERSION OF MINING STOCKS—SUFFICIENCY OF EVIDENCE.—Plaintiff relied upon two grounds: first, that Pixley was a partner of McConnell at the time of the conversion of the mining stocks; second, that if not a partner in fact, he suffered himself to be held out to the world as such: *Held*, that the evidence was sufficient to sustain a verdict in favor of plaintiff upon both grounds.

CONFLICT OF EVIDENCE.—Rule as to conflict and weight of evidence enforced.

PARTNERSHIP—PUBLICATION OF NOTICE OF DISSOLUTION—LIABILITY OF PARTY WHO HOLDS HIMSELF OUT TO THE WORLD AS A PARTNER.—If a retiring partner, after notice of dissolution is published in a newspaper, holds himself out to the world as a partner, he must, in order to relieve himself from liability on account of such publication, prove that knowledge of such notice of dissolution came to the actual knowledge of plaintiff.

IDEM—CREDIT OF RETIRING PARTNER.—If one partner, after the dissolution of the copartnership, consents that his name shall be held out to the world as a partner, all persons, whether new customers or not, will be presumed to deal with the firm upon this partner's credit as well as upon the credit of the other partner.

IDEM—BELIEF OF PLAINTIFF THAT RETIRING MEMBER WAS STILL A PARTNER.—If plaintiff was aware of the previous copartnership, and had no knowledge of the dissolution, and was misled by the acts of the retiring partner, and induced to deal with the firm upon the faith and belief that the retiring partner was still a member of the firm, it would not be incumbent upon her to show "that she would not have so dealt but for that belief."

IDEM—KNOWLEDGE OF DISSOLUTION—LAPSE OF TIME TO BE CONSIDERED.— The defendant asked the court to instruct the jury, that in determining the question, whether plaintiff was ignorant of the fact of dissolution, they should take into consideration, among other things, "the lapse of time occurring after the alleged dissolution, and prior to plaintiffs dealing with McConnell & Co." The court struck out these words: *Held*, upon a review of the entire instruction, that the jury were not misled to the prejudice of the defendant. (Beatty, C. J., dissenting.)

TROVER—ALLEGATION OF VALUE MATERIAL.—The allegation of value in an action of trover is a material averment. If not denied, it need not be proven.

IDEM—TIME OF CONVERSION IMMATERIAL.—The allegation as to the time of conversion, in an action of trover, is immaterial.

INSTRUCTION—NOTICE AND DEMAND.—The instruction as to notice and demand, as modified, reads as follows: "If you find from the evidence that the stocks mentioned in the complaint were sold by McConnell & Co., pursuant to a lawful notice to the plaintiff that they would be so sold,

if she failed to make her margins good within a time specified by the notice, and that the plaintiff did so fail, then your verdict will be for the defendant, provided you find that defendant was entitled to sell said stocks upon the giving of such notice, and the failure of the plaintiff to comply with the demand of such notice:" *Held*, no error.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts sufficiently appear in the opinion.

*Lindsay & Dickson*, for Appellant:

I. The evidence was insufficient to justify the verdict. There is no substantial conflict in the testimony. The fact that there is some evidence to sustain the verdict does not preclude this court from ordering a new trial on the ground that the evidence is insufficient. There must be a substantial conflict. (*State* v. *Yellow Jacket S. M. Co.*, 5 Nev. 415; 49 Cal. 375.)

II. The evidence is also insufficient to justify the verdict, and the same is against law, because it appears from the testimony of McConnell, which is undisputed on this point, that the plaintiff was owing McConnell & Co. upon the stocks alleged to have been converted, over five thousand three hundred and ninety dollars at the time, and long before the commencement of this action. And there is no testimony in the case that any demand was ever made by or on behalf of plaintiff, for the possession of said stocks; or that any tender of the amount so due upon said stock was ever made to defendant, by or on behalf of the plaintiff. (Story on Bail., sec. 314; *Boylan* v. *Huguet*, 8 Nev. 345; *Atkins* v. *Gamble*, 42 Cal. 87.)

III. The court erred in giving to the jury the first instruction relative to the allegation of value not being denied by the answer. It is only the material allegations of a complaint which are admitted, when not controverted by the answer. (1 Comp. L. 1128.)

Is the allegation of value, in an action of trover, a material allegation? (Chit. on Pl. 377, and note 1; Waits' Ann. Code, 311.)

The New York courts have repeatedly held that the

allegation of value in a complaint in trover is not admitted by a failure to deny it in the answer. (2 Wait Pr. 417, 425; *McKenzie* v. *Farrell et al.*, 4 Bosw. 192, 201, 202; *Raymond* v. *Traffarn*, 12 Abb. Pr. 52; *Connoss* v. *Meir*, 2 E. D. Smith, 314; *Hackett* v. *Richards*, 3 Id. 13, 31; *Newman* v. *Otto*, 4 Sandf. 668.)

But if the allegation of value be material, a failure to deny it by answer, in this case, admitted that the stocks in question were worth the sum alleged in the complaint, at any and all times between the second of September, 1878, and the third of March, 1879, and nothing further. An admission can not be any broader than the allegation claimed to be admitted.

The allegation of time was rendered material in this case by the manner in which it was connected with the allegation of value.

That which is immaterial is frequently rendered material by the manner in which it is pleaded. (1 Greenl. on Ev., secs. 50, 60; *Todd* v. *Myres*, 40 Cal. 355.)

IV. The court erred in modifying the instructions asked by appellant. (See *Sharon* v. *Minnock*, 6 Nev. 377; Parsons on Part. 412; Wade on Law of Notice, sec. 513; Parsons on Part. 413, 418; Biglow on Estop. 425, 426.

*R. M. Clarke*, for Respondent:

I. The evidence was sufficient to justify the verdict. The judgment is supported by an overwhelming preponderance of the evidence.

II. By consenting to the use of his name in the contracts of purchase with respondent, Pixley became a party to such contracts, and is conclusively bound thereby. (Wade on Notice, sec. 486; *Emmett* v. *Butler*, 7 Taunt. 232; *Ketcham* v. *Clarke*, 6 Johns, 144; Parsons on Part. 413, 414; Collyer on Part. sec. 535.)

III. It was not necessary to prove the value of the stock converted. The complaint alleged the value, and the answer failed to deny it.

This averment was material, and a failure to deny it made it unnecessary to prove it. (*Carlyon* v. *Lannan*, 4 Nev. 156; *Blackie* v. *Cooney*, 8 Nev. 41.)

IV. The modified instructions which the court gave do not contain any error which is prejudicial to the appellant.

By the Court, HAWLEY, J.:

This is an action of trover, brought by plaintiff to recover from defendants, Robert F. Pixley and Isaac McConnell, as copartners, the sum of twenty-three thousand three hundred and ninety dollars, for the alleged wrongful conversion of certain shares of mining stocks.

Defendant McConnell suffered default.

Defendant Pixley appeared, and filed an answer denying that at the time of the alleged transactions with plaintiff he was a partner with the defendant McConnell.

The plaintiff, in order to sustain this action against Pixley, relied upon two grounds: First. That he was a partner at the time of the alleged conversion. Second. That if not a partner in fact, he suffered himself to be held out to the world as such, and thereby became liable to plaintiff. The jury found a verdict in favor of plaintiff.

The defendant, Pixley, appeals.

1. Appellant claims that the evidence is insufficient upon either branch of the case, to justify the verdict.

It appears that the defendants in March, 1875, entered into a copartnership, in Carson City, Nevada, to carry on and conduct the business of stock brokers under the firm name of Pixley & McConnell. This partnership continued until the thirteenth of June, 1877, at which time, according to the testimony of Pixley, it was dissolved. But, according to the testimony of McConnell, this dissolution was a sham; that notice thereof was published in the newspapers to induce Pixley's creditors to believe that there had been a dissolution in fact, so that they might be prevented from attaching the firm assets.

Each defendant was equally interested in having his own testimony sustained. Evidence was introduced tending to corroborate the statement of each defendant, and there were facts and circumstances testified to on each side by other witnesses, which were, to some extent, inconsistent with the testimony of the respective defendants.

Upon the testimony, it was exclusively within the province of the jury and the court below to decide the question whether the dissolution was *bona fide* or not. There being, in our opinion, a substantial conflict in the evidence, the verdict of the jury will not, upon this ground, be disturbed.

2. It is admitted that appellant suffered himself to be held out as a partner after the date of the dissolution, and we are of opinion that plaintiff's evidence shows that she was induced to deal with McConnell & Co. by reason of her belief that Pixley was a member of the firm. The record shows that, after the date of the publication of the dissolution, the business was conducted by McConnell at the same place, in the name of McConnell & Co.; that plaintiff was aware of the partnership relations existing between Pixley & McConnell, prior to the thirteenth of June, 1877; that she had no actual knowledge of the dissolution; that she never transacted any business with the firm, or either member thereof, until about five months after the publication in the newspapers of the dissolution of copartnership; that in all her transactions the same blanks were used in the business, with the heading printed thereon, "Pixley & McConnell, Stock Brokers," as were used by the firm before the date of the dissolution; that all the accounts of the purchases and sales of stock which were rendered plaintiff, show upon their face that the business was conducted by "Pixley & McConnell, Stock Brokers," and that Pixley had knowledge of the use of said blanks and consented thereto.

The evidence is clearly sufficient to sustain the verdict upon this branch of the case.

Unless the legal objections urged by appellant's counsel are well taken, the judgment of the district court must be affirmed.

3. It is claimed that the court erred in modifying the following instructions asked by appellant:

"1. If you find from the evidence that the defendant, Robert F. Pixley, was not in fact a member of the firm of McConnell & Co. subsequent to the month of June, A. D. 1877, then your verdict must be for the defendant, unless

you find the said defendant, Robert F. Pixley, failed to give proper notice of his dissolution of copartnership with the defendant Isaac McConnell, and that the plaintiff was misled *to her prejudice* by such failure. It is admitted that the plaintiff never had any business dealings with the defendants until after the thirteenth day of June, 1877, the time when the defendant, Pixley, claims that the partnership was dissolved, therefore, general publication in the newspapers published in the town where the defendants carried on their business prior to the alleged dissolution, and where the plaintiff resided, would be sufficient notice to the plaintiff of the dissolution."

The court modified this instruction by striking out the words "to her prejudice," and by adding at the end thereof: "Provided, that knowledge of such notice of dissolution of copartnership came to the actual knowledge of plaintiff."

"2. It is claimed by the plaintiff that the defendant, Pixley, is jointly liable with the defendant, McConnell, to the plaintiff in this action, notwithstanding Pixley may not have been in fact a partner of McConnell in the stock brokerage business after the thirteenth day of June, A. D. 1877, for the reason that the old signs of Pixley & McConnell remained, and were used, after that time, at the place of business of McConnell & Co., and that the old form used by Pixley & McConnell continued, after the time of the alleged dissolution, to be used by McConnell & Co.

"In order to warrant you in holding the defendant liable on this ground you must be satisfied:

"1. That the old signs and the old forms continued to be so used with the consent of the defendant, Pixley.

"2. That the plaintiff was ignorant of the fact of the dissolution, and in determining the question whether she was ignorant or not, you are to take into consideration the fact of the published notices of dissolution, the time and manner of their publication, the place which they occupied in the paper, the greater or less notoriety of the fact of the dissolution, the plaintiff's intimacy with the family of the defendant, Pixley, at the time of the alleged dissolution; *the lapse of time occurring after the alleged dissolution and prior to*

*the plaintiff's dealing with McConnell & Co.*, and all other circumstances showing the manner in which the dissolution was communicated; and if, from all these circumstances, you believe that the fact of the dissolution was likely to come to the knowledge of plaintiff, you may infer that it did so come to her knowledge, if you believe that it did.

"3. If you find that the plaintiff, before her dealings with McConnell & Co., had knowledge of the existence of the former partnership between Pixley and McConnell, and that she was actually ignorant of the fact of the dissolution, still you can not hold defendant, Pixley, liable, if you find that he was not a partner in fact after June, 1877, unless you are also satisfied from the evidence that the plaintiff was misled to her prejudice by the use of the old signs and forms in use by McConnell & Co. with the consent of Pixley; that is, unless you find that the plaintiff dealt with McConnell & Co., believing that Pixley was a member of the firm of McConnell & Co., *and that she would not have so dealt but for that belief.*"

The court modified this instruction, by striking out the sentences we have italicized, and by inserting after the word "prejudice" the words "by her former knowledge of the partnership."

We are of opinion, that the modifications made by the court were not prejudicial to the defendant. The first instruction ought to have been refused. If intended to apply to the first branch of the case, it was erroneous, because it authorized a verdict in defendant's favor, although the jury might believe that Pixley held himself out to the world as a partner. Had it contained the necessary qualification upon this point, the modification made by the court would have been erroneous.

If intended to apply to the second branch of the case, the modification was correct. The second instruction refers exclusively to the second branch of the case, and, as given to the jury, is correct.

If Pixley, after the dissolution, consented that his name should be held out to the world as a partner, all persons, whether new customers or not, having knoweledge of the

previous copartnership, would be presumed to deal with
the firm upon Pixley's credit as well as upon the credit of
McConnell.

If the evidence satisfied the jury that plaintiff was aware
of the previous copartnership; that she had no knowledge
of the dissolution; that she was misled · by the acts of
Pixley, and induced to deal with the firm of McConnell &
Co., upon the faith· and belief that Pixley was a partner,
then it was not incumbent upon her to show " that she
would not have so dealt but for that belief."

The most important question, upon which we entertain
some diversity of opinion, is as to the effect of tho action
of the court in striking out the words: " The lapse of time
occurring after the alleged dissolution, and prior to the
plaintiff's dealing with McConnell & Co." The jury had the
right to take into consideration all the circumstances speci-
fied in the second subdivision of this instruction, as asked
by the defendant's counsel, in determining whether or not
the fact of the dissolution was likely to have come to the
knowledge of the plaintiff.

In some cases " the lapse of time" might, in connection
with other circumstances, be very material and important.
(*Merrit* v. *Pollys*, 16 B. Mon. 357.)

I am of opinion, that, although it would have been proper
to have left this clause in, the error of striking it out is
not of sufficient gravity to authorize a new trial in this case.
I am satisfied that the defendant was not prejudiced by the
action of the court in striking it out. The controlling
questions were as to the fact of the published notices of
the dissolution; the greater or less notoriety of the fact of
the dissolution, and the plaintiff's intimacy with the family
of the defendant, Pixley. In considering these questions
the jury would necessarily have to take into consideration the
length of time the notices were published, and all the notori-
ety of the dissolution after it occurred, and prior to the time
that plaintiff commenced " dealing with McConnell & Co."

The instruction, as given to the jury, fairly presented the
law, applicable to this branch of the case, in such a manner
that the jury could not have been misled as to their duty.

4. The court did not err in giving or refusing certain instructions upon the assumption that the value of the stocks, as alleged in the complaint, was admitted by a failure to deny it in the answer.

This court has decided that the allegation of value in an action of trover is a material allegation, and if not denied, need not be proven. (*Carlyon* v. *Lannan*, 4 Nev. 156; *Blackie* v. *Cooney*, 8 Id. 41.)

The complaint alleges that since the "second day of September, A. D. 1878, and before the commencement of this action, said defendants appropriated and converted to their use said shares of stock. That the value of said shares of stock *at the time of said conversion* was twenty-three thousand three hundred and ninety dollars."

The evidence shows that the stocks were converted in the month of August, 1878, prior to the time alleged in the complaint, and there was no proof offered as to the value of the stock at that or any other time.

The statement of counsel, that appellant, by failing to deny an allegation, that between the second of September, 1878, and the third of March, 1879, the stocks were worth twenty-three thousand three hundred and ninety dollars, does not admit that they were worth that or any other sum in August, 1878, is technically correct.

But the law is that the allegations as to the time of the conversion is immaterial, and by the failure to deny the allegations of the complaint, the defendant, Pixley, admitted "that the value of said shares of stock, *at the time of said conversion*, was twenty-three thousand three hundred and ninety dollars."

5. There is no error in the modifications made by the court to the second instruction, asked by the defendant, Pixley, relating to the question of notice and demand.

The judgment of the district court is affirmed.

BEATTY, C. J., dissenting.

I do not feel able to say that the error of the court in striking out the "lapse of time," etc., could not have prejudiced the appellant, and am therefore obliged to dissent.