[No. 1837, February 21, 1916.]

## BRUTON v. SAKARIASON et al.

### SYLLABUS BY THE COURT.

1. A. was employed by B. to care for and manage his sheep, which were grazed upon the open range. During the time that he was so employed, A. feloniously steals and drives into B.'s herd the sheep of another. **Held**, that such larceny was not in the "course of employment," and that a judgment against B. cannot be sustained in the absence of evidence showing ratification or the acceptance of benefits.
P. 442

2. Every person is liable in trover who personally, or by agent, commits an act of conversion, or who participates by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part.    P. 443

3. Value of the thing converted is a "material allegation" in a case of trover and conversion; hence, where alleged, and not denied, no proof of value is required.    P. 444

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

Bruton. v. Sakariason, 21 N. M. 438.

Action by Charles B. Bruton against John E. Sakaria-son and others. From a judgment for plaintiff, defendants appeal. Reversed, with directions.

M. C. Spicer and J. A. Lowe of Socorro, for appellants.

· Where findings are not supported by substantial evidence they will be set aside on appeal.

Locke v. Murdock (just decided, but not reported).; Fraser v. Bank, 18 N. M. 340; Millheiser v. Long, 10 N. M. 99.

Where there is no allegation of wrongful possession of chattels, then either a demand or an overt act of conversion is necessary to sustain an action.

Moore v. Monroe Refrigerator Co., 29 So. 447 (Ala.); Fairbanks v. Chunn, 56 So. 847 (Ala.); Scribener v. Woodward, 73 Pac. 863 (Cal.); Shriner v. Meyer, 55 So. 156 (Ala.), Ann. Cases 1913A, 1103; Jebeles C. O. N. F. Co. v. Hutchinson, Ann. Cases 1913A, 1117; Meyers v. Doherty, 11 L. R. A. (N. S.) 247; 38 Cyc. 2032; Olsen v. Merrill, 91 Am. Dec. 428; First National Bank v. Kech-fusch, 47 N. W. 267; see note Ann. Cases 1913A, 1108.

Edward A. Mann of Albuquerque, for appellee.

The rule of respondeat superior applies, even though no benefits were received by reason of the conversion, if the act took place in the course of the business.

2 A. & E. Enc. Law, 1197, 1199; 31 Cyc. 1582, 1585; Jackson v. Am. Tel. & Tel. Co., 70 L. R. A. 738; Rucker v. Smoke, 37 So. 377, 34 A. S. R. 758.

· Conversion by agent was a conversion by master.

38 Cyc. 2054; Bancroft-Whitney Co. v. McHugh, 134 Pac. 1157; Avakain v. Noble, 53 Pac. 559; Chamberlin v. Shaw, 18 Pick. 278, 29 Am. Dec. 586; Swin v. Wilson, 90 Cal. 126, 25 A. S. R. 110; Dow v. Simpson, 17 N. M. 357, 369.

The value was proved and not denied.

Di Palma v. Ruppe, 16 N. M. 302; sec. 4143, Code 1915; Street v. Smith, 15 N. M. 95.

Value is a material allegation.

Hixon v. Bickley, 15 Nev. 475; 38 Cyc. 2068; Kuhland v. Sedgewick, 17 Cal. 123; Herlich v. McDonald, (Cal.) 22 Pac. 298; Recht v. Glickstein, 162 Ind. 32, 69 N. E. 667; Harlan v. Brown, 4 Ind. App. 319, 30 N. E. 928.

### REPLY BRIEF.

The doctrine of respondeat superior has no application when the servant or agent steps aside from the purpose of the agency committed to him and inflicts an independent wrong.

Goodloe v. Memphis Ry. Co., 54 Am. St. R. 67 (see note p. 85); Golden v. New Brand, 2 N. W. 537; McDermott v. Am. Brewing Co., 83 Am. St. R. 225; Canton Co. v. Pool, 84 Am. St. R. 620 (Miss.); Williams v. Pullman Palace Car Co., 8 Am. St. R. 513.

Master must have known of conversion, that it was committed for his benefit and that he actually received benefit, before master can be said to have ratified conversion.

Livingston Mfg. Co. v. Rizzi Bros., 85 Atl. 912 (Vt.); Wyner v. Grant, 81 S. E. 949 (N. C.); Wise & Bros. v. Texas Co., 82 S. E. 974; Butts v. Ajax Griele Co., 155 S. W. 837 (Mo.); Interstate Lumber Co. v. Duke, 62 So. 845 (Ala.).

If the servant does a willful, malicious, wrongful, or criminal act, without the master's authority, and not for the purpose of furthering the interests of the master the latter is not answerable in damages therefor.

See note in 54 Am. St. Rep., p. 85; Stephenson v. Southern Co., 27 Am. St. Rep. 223; Howe v. Newmarch, 12 Allen, 49; Stringer v. Missouri Pac. Ry. Co., 96 Mo. 299; Roeber v. Society, etc., 47 N. J. L. 237; Walker v.

Hannibal, etc., R. R. Co., 42 Am. St. Rep. 547 (Mo.); Wright v. Wilcox, 32 Am. Dec. 507, and collected cases in note thereto.

Allegations of amount, value or damages immaterial, and not admitted by failure to deny.

31 Cyc. 210; Wood v. Steamboat Fleetwood, 19 Mo. 529; Field v. Barr, 27 Mo. 416; Best v. Stewart, 67 N. W. 881; Campbell v. Brosius, 55 N. W. 215.

Failure to deny is waived by treating matter as one of the issues of the case.

31 Cyc. 212 (C); Granby Min., etc., Co. v. Davies, 57 S. W. 126; Crossland v. Admire, 51 S. W. 463; Turner v. Butler, 28 S. W. 77; Albion Milling Co. v. First National Bank, 89 N. W. 638 (Neb.); No. Pacific Ry. Co. v. Palmer, 76 N. W. 169 (Neb.); Canavan v. Canavan, 17 N. M. 510-511.

### OPINION OF THE COURT.

ROBERTS, C. J.—Appellee sued appellants for damages for the alleged conversion of 552 head of sheep, of the stated value of $5 per head. Upon a trial before the court, a jury having been waived, the facts were found in favor of the appellee and judgment was entered for him against all the appellants for $2,322. From this judgment, appellants appeal.

The facts upon which the judgment was based, briefly stated, are as follows: Oleson M. Sakariason was advanced in years and was the owner of about 5,000 head of sheep. These sheep were in charge of his two sons, Frederick A. and John E. Sakariason, some distance out of Magdalena. Bruton likewise was engaged in the sheep business, having some 4,000 or 5,000 head of sheep. The two ranges were in the same section of the country, but some little distance apart. Bruton missed quite a bunch of his sheep, and upon search by him and one of his employes, they were discovered intermixed with the Sakariason herds. At that time he separated some 20 or 30 of his

sheep from the Sakariason herds, with the knowledge and acquiescence of one of the boys, and took them away. He found many freshly branded sheep in the herds, but did not take them, but arranged for his return at the time of shearing, which was but a few days off, and a further examination. Some days later, at shearing time, he returned, and upon agreement made with the two boys to that effect he counted out and marked something over 500 head of sheep which he claims, and which the evidence shows belonged to him. These sheep were left with the Sakariason flocks, because the time was not propitious to move them on account of the dry weather and for other reasons. Later he arranged with one of the boys to meet him and separate the sheep and move them; but when he went to the meeting place he found that the young man had gone to Socorro, whereupon he also went there and had the two boys arrested for larceny. There was evidence by one witness that he saw one of the Sakariason boys driving in the Bruton sheep, and there was ample evidence to establish the fact that both the young men knowingly and deliberately took Bruton's sheep and rebranded them. The only question that presents any difficulty is as to the connection of the father with the transaction. Appellee contends that the judgment against the estate of the father, who died after the suit was instituted, is sustainable upon either of two grounds: (a) Because the conversion of the property was by the agents of said Sakariason, acting for and on his behalf and within the scope of their authority; (b) because said Sakariason received and accepted the benefits arising from said conversion. If either of these two propositions is supported by substantial evidence, of course, the judgment is clearly right.

[1] The evidence in the record shows only that the boys were in charge of their father's sheep. No direct evidence was offered as to the extent of their duties and powers; but, assuming they were to safely keep, tend, and care for said sheep, in the usual way and manner, known to the people generally, in the open range country, did

the larceny of sheep or others occur in the "course of employment?"

"What may be an agent's 'course of employment' in one case or for a certain purpose may not be in another case or for a different purpose. It is certain, however, that the agent must be engaged in the principal's business, and the tort must be committed while he is carrying out such business. If, from a consideration of all the facts and circumstances of the case, it is determined that the agent was acting for his principal, and in pursuance of his real or apparent agency, at the time the tort was committed, then it may be said that he was acting in the course of his employment, and the principal will be liable for such tort, whether authorized or not." Clark & Skyles, Law of Agency, § 494.

Certainly it would be a dangerous doctrine to hold that larceny, by a herder on the open range, of cattle, sheep, or horses, came within the scope of the servant's employment and rendered the master liable for the tort. If such were true, in almost every case where a man was working for another, and while so employed should steal from another, the master would be required to respond in damages for the tort, however foreign to his master's business such wrong may have been. Of course, if it had appeared from the evidence that in some manner the two flocks became intermixed, and that it was the duty of Sakariason's servants to determine what sheep belonged to him and those belonging to the other party, it might be contended, logically, that his servants were acting within the "course of employment"; but in this case it appears that the Bruton sheep were deliberately stolen and driven into the Sakariason herds. Such being true, we are confronted by the simple question as to whether larceny is in the "course of employment" of an agent employed to care for the master's flocks on the open range. It must be resolved in the negative.

[2] Did the master ratify the acts of his servants? There is no evidence tending to show that the father had any knowledge whatever of the tortious acts of his sons, nor does the evidence show that he received the proceeds of the sale. It is true both sons testify that "most of the sheep" claimed by Bruton were sold, but by whom, or to

whom the proceeds went, the record is silent. The rule, quoted by appellee from Cyc. (vol. 38, p. 2054), as follows:

"Every person is liable in trover who personally or by agent commits an act of conversion, or who participates by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part."

—states the law correctly, but the facts here do not bring Oleson M. Sakariason within it. If appellee had traced the proceeds of the sale into the hands of Oleson M. Sakariason, he would have brought him within the rule, and could have sustained a recovery against him. This he failed to do; hence the judgment against Oleson M. Sakariason cannot be sustained.

[3] The only point urged as ground of reversal on behalf of the two sons, which merits consideration, is that there was no evidence justifying the finding that the sheep were of the value of $5 per head. The evidence did not justify this finding, but the court committed no error in this regard, because the complaint alleged that the sheep were of the value of $5 per head, which the defendants failed to deny in their answer. The Code (section 4143, Code 1915) provides:

"Every material allegation of the complaint not controverted by the answer * * * shall for the purposes of the action be taken as true."

The value of the thing converted is a "material allegation" in a case of trover and conversion. 38 Cyc. 2068; Hixon v. Pixley, 15 Nev. 475. The allegation, being material and undenied, was properly taken as true by the trial court.

There is no available error in the record as to John E. and Frederick A. Sakariason; hence as to them the judgment will be affirmed. As to the estate of Oleson M. Sakariason, the judgment will be reversed, with instructions to the trial court to award the administrator of said estate a new trial; and it is so ordered.

HANNA and PARKER, J.J., concur.