639 P.2d 75

**ULIBARRI LANDSCAPING MATERIAL, INC., Plaintiff-Appellant,**

v.

**COLONY MATERIALS, INC., Philip Naumburg and John Miller, Defendants-Appellees.**

**ULIBARRI LANDSCAPING MATERIAL, INC., Plaintiff-Appellee,**

v.

**COLONY MATERIALS, INC., Philip Naumburg and John Miller, Defendants-Appellants.**

**Nos. 5190, 5279.**

Court of Appeals of New Mexico.

Dec. 8, 1981.

Alfonso G. Sanchez, J. Ronald Boyd, Sanchez & Boyd, P. A., Santa Fe, for plaintiff-appellant.

Joseph A. Sommer, Houston Morrow, Sommer, Lawler & Scheuer, P. A., Santa Fe, for defendants-appellees.

## OPINION

WALTERS, Chief Judge.

Colony Materials, Inc. (Colony) appeals a jury verdict entered against it for damages arising from plaintiff Ulibarri Landscaping Materials, Inc.'s (Ulibarri's) complaint for conversion of scoria. Defendants Naum-

berg and Miller were dismissed from the suit; that order is not challenged by the parties. Colony presents three points for reversal: (1) insufficient evidence of conversion; or alternately, if there was a conversion, insufficient evidence to assess liability against Colony; (2) award of excessive damages, and (3) error in costs assessed.

Ulibarri stipulated at oral argument that it would abandon its appeal for additur if the damage award was affirmed. Since we affirm on Colony's Points 1 and 2, and reverse, in part, on the issue of costs, we do not consider plaintiff's appeal.

*Facts* :

Ulibarri and Colony were granted permits to mine and remove scoria from a community pit operated by the Bureau of Land Management (BLM). Around January and February, 1980, Ulibarri excavated a substantial amount of scoria material and stockpiled it at the pit, as its contract with BLM permitted it to do. During May of that year, Colony's president Naumberg, its general manager Miller, and its bulldozer employee Horacio Baca went to the pit for the purpose of digging and removing scoria for Colony's use. As Colony states in its brief, "Naumberg and Miller told Baca to create a pathway through the ridge created by the stockpiled material [belonging to Ulibarri], to rip scoria in the area between that ridge and the hill [behind the stockpiled material] and to bring the material so ripped or loosened back through the pathway to a point next to the road [where it could be loaded and hauled to Colony's crusher]." Baca was paid $8.00/hour as a Caterpillar operator by Colony.

Two days after Baca had accumulated a pile of scoria near the road and Colony's equipment had been removed from the site, Baca returned with his own loader and trucks and hauled the scoria to Colony's plant. Baca's drivers were members of his family. He was paid by Colony on a hauling contract at the rate of $1.50 per cubic yard for the scoria carried to the plant; and he received $2,128 for hauling 1,419 cubic yards for Colony. There was evidence that Colony reported to BLM that it had removed 413 tons from the pit, which according to the testimony, would convert to approximately 670 cubic yards of material. After suit was filed, Colony sent a correction to BLM, asserting it had removed 1,419 cubic yards, or approximately 875 tons.

Several witnesses, including a surveyor, testified for Ulibarri regarding the size of the stockpile before and after the pathway had been bulldozed through it. The estimates of the original size of the pile ranged from 200-to-350 feet long, 40-to-180 feet wide, and 10-to-30 feet high. The surveyor, from evidence at the site and information from Alfonso Ulibarri, determined the original stockpile to have been $212' \times 85' \times 14'$, containing approximately 15,000 cubic yards of scoria. Estimates of the amount missing after the pathway had been cut through the pile varied from 4,780 to 5,500 cubic yards.

In answer to plaintiff's complaint, Colony denied that it converted the scoria and denied liability. It contended in this court that if any material had been removed from the pit, it had been removed by Baca acting as an independent contractor rather than as an employee of Colony.

*Point I(A): Evidence of Conversion*

Colony argues first that Baca was told to dig scoria from behind the Ulibarri stockpile and no eye-witness saw Colony's employee remove any of Ulibarri's material. Thus, it says, there were no reasonable inferences that would permit the jury to find conversion by Colony or any of its employees.

As we have set out in the *Facts* above, there was evidence that Ulibarri had stockpiled an amount of scoria in the community pit. There was testimony that Horacio Baca was directed to cut through the stockpile in order to excavate and remove scoria for Colony. The jury was told that as many as 5,500 cubic yards were missing from Ulibarri's stockpile after Baca had worked in the pit. We are urged here to review the evidence and overturn the jury's verdict. That, of course, is not the function

of a reviewing court; the trier of fact weighs testimony and determines credibility of witnesses, reconciles inconsistent or contradictiory evidence and determines where the truth lies. *Westbrook v. Lea General Hospital*, 85 N.M. 191, 510 P.2d 515 (Ct.App. 1973). An appellate court examines the evidence in a light most favorable to the prevailing party and does not disturb a verdict because the evidence might be in conflict. *Gonzales v. General Motors Corp.*, 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976). There was substantial evidence from which a jury could properly conclude that a conversion had taken place.

*Point I(B): Conversion by Colony*

Colony's argument on this issue is that Horacio Baca was an independent contractor when any converted material was hauled away; therefore, Colony cannot be liable for Baca's wrongful acts. It cites *Chevron Oil Co. v. Sutton*, 85 N.M. 679, 515 P.2d 1283 (1973); *Scott v. Murphy Corp.*, 79 N.M. 697, 448 P.2d 803 (1969); *Roybal v. Bates Lumber Co.*, 76 N.M. 127, 412 P.2d 555 (1966), and *Jaramillo v. Thomas*, 75 N.M. 612, 409 P.2d 131 (1965), to support this argument, and distinguishes *Burton v. Crawford & Co.*, 89 N.M. 436, 553 P.2d 716 (Ct.App.1976).

Colony further contends that even if Baca were an employee of Colony, there is no testimony that Colony ordered Baca to convert any of Ulibarri's scoria, nor is there evidence that Colony accepted the benefits of the conversion with knowledge of the conversion. It points to *Bruton v. Sakariason*, 21 N.M. 438, 155 P. 725 (1916), to illustrate the kind of facts necessary to show conversion.

We have no dispute with the law of independent contractor stated in the cases cited by Colony. We are impressed, however, with the observation made in *Chevron Oil, supra,* that the manner in which the parties designate a relationship does not control whether a master-servant or independent contractor relationship has been created. If an act done by one person on behalf of another is, in its essential nature, one of agency, the one is an agent of the other notwithstanding that he is not so called. This principle is stated and commented upon at § 2 of the Restatement (2d) of Agency.

We observe that the record on appeal indicates that Ulibarri requested that the entire record, excluding depositions, be prepared for the appeal. Colony filed a notice that it would rely on the record and transcript ordered by plaintiff. A review of the record forwarded to this court does not disclose that any requested instructions were filed by Colony; its Statement of Proceedings does not challenge any of the instructions given by the trial court. With that background, it appears almost conclusive that the defense of independent contractor was never pled; never litigated; never raised before or during the trial of this case, nor was any instruction offered on that theory.

Looking to the unchallenged instructions given, the jury was told, in part, that if it should find that plaintiff had proved that

defendants and their agents, servants and employees did forcibly, knowingly, wrongfully, maliciously and wilfully, without consent, trespass upon the exclusive leasehold of the plaintiff and remove therefrom, 4,780 cubic yards of stockpiled scoria red pumice,

it should return a verdict for plaintiff. Instruction 21 told the jury that a master-servant relationship exists

when one person who employs another to do certain work has the right of control over the performance of the work to the extent of prescribing the manner in which it is to be done. The employer is the master and the person employed is the servant. "Master" is synonymous with "employer" and "servant" is synonymous with "employee."

In Instruction 23, the jury was further advised that

any act or omission of an officer or any employee of a corporation with in the scope or course of his employment is the act or omission of the corporation.

■ Defendant concedes that Baca was its employee when Colony's general manager directed him to cut a hole through the Ulibarri stockpile and remove the excavated scoria to a point near the access road. Although Colony may have considered Baca to be an independent contractor at the time he loaded and hauled the scoria to Colony's yard, under the instructions given the jury could have found that Baca was Colony's employee: Colony had control over the performance of Baca's work to the extent that the general manager directed Baca where to excavate and dump the scoria, how much to transport, and where to unload it. The instructions, not objected to, allowed the jury to find that Baca was Colony's employee and, therefore, its agent when he hauled the scoria to Colony's crusher. Restatement (2d) of Agency, *supra.*

■ Since Baca's employment was a permissible finding, even though he may not have been authorized to deliver any scoria removed from Ulibarri's stockpile, Colony's acceptance of the converted material was a sufficient ratification of Baca's action to subject it to liability to the plaintiff. Ratification is the adoption or confirmation by a principal of an unauthorized act performed on its behalf by an agent. *Grandi v. Lesage,* 74 N.M. 799, 399 P.2d 285 (1965). A principal who expressly or impliedly elects to ratify unauthorized acts of an agent will not be permitted to accept the benefits and reject the burdens of the acts. *Id.* One may infer affirmance by a principal of an unauthorized transaction of its agent from the principal's failure to repudiate it. *Warren v. New York Life Ins. Co.,* 40 N.M. 253, 58 P.2d 1175 (1936). Having found conversion, the jury could properly enter a verdict of liability against Colony.

*Point II: Excessive Damage Award*

■ Colony assumes that the verdict of $42,970.00 must be based on a price of $8.98 per cubic yard for the amount of scoria alleged to have been converted, and argues that there is no evidence in the record to support that figure. In reviewing a claim of excessive damages, we follow the rule set out in *Gonzales v. General Motors Corporation, supra,* 89 N.M. at 480, 553 P.2d 1281:

> The question of excessiveness is determined by (1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award, and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder.

Jury Instructions Nos. 11 and 14 directed the jury, if it found defendant liable, to award the plaintiff the net value of the scoria at the time of conversion, with interest. There was evidence that the value of unprocessed scoria was $7.25 per cubic yard, and there was evidence that as much as 5,500 cubic yard of scoria had been converted. The jury was not instructed on the interest rate to be applied; thus we have no way of knowing either the amount of scoria found by the jury to have been converted, or the interest rate applied from the date of conversion. $7.25 × 5,500 cubic yards equals $39,875. A 10% interest surcharge would bring the verdict well within the evidence; and an interest charge at that rate would not shock or surprise anyone slightly familiar with the meteoric rise of interest rates well beyond 10% in the past few years.

■ Damages need not be proved with mathematical certainty. *Trigg v. Allemand,* 95 N.M. 128, 619 P.2d 573 (Ct. App.1980). In the absence of any showing of prejudice, passion, partiality, undue influence, or mistaken measure of damages, the amount of the jury's verdict will be sustained. *Wirth v. Commercial Resources, Inc.,* No. 4707, 20 N.M.S.B.B. 729, filed May 5, 1981.

*Point III: Costs Assessed.*

The trial court denied defendant's objections to three items listed in Ulibarri's bill of costs: costs of the copy of a deposition; the cost of the land survey, and the costs of the jury. Plaintiff admits that it is not entitled to recover for the costs of the jury which it demanded.

■ The matter of assessing costs lies within the discretion of the trial court, and unless an abuse of discretion is shown, an appellate court will not interfere. *South v. Lucero*, 92 N.M. 798, 595 P.2d 768 (Ct.App. 1979). It was held in *Budagher v. Sunnyland Enterprises, Inc.*, 90 N.M. 365, 563 P.2d 1158 (1977), that allowance of costs for copies of depositions was not an abuse of discretion. *See also* § 39–2–7, N.M.S.A.1978.

■ The land survey was performed by an expert who testified for Ulibarri. Ulibarri relies on *Hughes v. West*, 78 N.M. 281, 430 P.2d 778 (1967), to support his claim that a surveyor's *fee* is properly recoverable as a cost to the losing party. Defendant Colony does not object to the expert *fee* paid to Vigil; its dissatisfaction is with the costs incurred for preparing the survey, which it was ordered to pay. Payment of a survey as a trial cost is a matter of first impression in New Mexico, and for that reason defendant urges its denial. We are cited by Colony to four decisions in other states: *Overton v. Blake*, 274 Or. 91, 554 P.2d 1037 (1976); *Roberts Const. Co. v. Vondriska*, 547 P.2d 1171 (Wyo.1976); *Mader v. Stephenson*, 481 P.2d 664 (Wyo.1971), and *Stratfort v. Wood*, 11 Utah 2d 251, 358 P.2d 80 (1961).

The disallowance of survey costs in *Overton, supra,* was based on the court's determination that the survey was not "necessary," within the meaning of the Oregon statute defining costs. New Mexico does not have a similar statute. The *Stratfort* court, although it held that surveys made in preparation for trial were "not in the nature of costs of damages," nevertheless allowed the prevailing plaintiffs to recover one-half the expense of a survey as a proper cost item. The court said in *Mader, supra,* that in the absence of clear statutory authority to allow costs the expense of obtaining a survey was not taxable to the losing party. And in the *Roberts* case, *supra,* the survey for which one-half the costs were sought by plaintiffs was made before the action was instituted; was made despite no real argument by defendant that it had stockpiled on the wrong property; and was without any showing of necessity or reasonableness. Additionally, the court noted (as it had in *Mader*) the absence of a statute expressly authorizing the expense of a survey as a cost item. On the other hand, in two cases cited by plaintiff, *Southwest Louisiana Mem. Corp. v. Duhon*, 313 So.2d 366 (La.App.1975), appraisal fees were allowed without reference to any statutory authority; and such fees were approved in *Metromont Materials Corp. v. Pennell*, 270 S.C. 9, 239 S.E.2d 753 (1977), under a statute granting "reasonable costs to the prevailing party."

Contrary to *Overton, Mader* and *Roberts, supra,* our Rule 54(d), N.M.R.Civ.P., N.M.S.A.1978, provides:

> Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.

In addition, § 38–6–4(B), N.M.S.A.1978, expressly allows additional compensation to an expert witness for the time expended in preparation or investigation prior to giving expert testimony. Vigil's testimony was largely based on his survey. There was no error in allowing the expense of the survey made preparatory for trial as costs against defendant.

The cost bill, with the exception of jury costs, is affirmed. The amount of recovery shall be reduced accordingly. In all other respects, the judgment is affirmed. Each party shall bear its own costs.

It is so ordered.

LOPEZ and DONNELLY, JJ., concur.