**31 P.(2d) 263**

**BURRUSS v. B. M. C. LOGGING CO. et al.**

**No. 3928.**

Supreme Court of New Mexico.

March 26, 1934.

Donald M. Bushnell, of Albuquerque, for appellants.

Joseph Gill, of Albuquerque, for appellee.

WATSON, Chief Justice.

E. C. Burruss was accidentally killed while driving a truck loaded with logs. His widow recovered judgment under the Workmen's Compensation Act (Comp. St. 1929, c. 156), from which the claimed employer and the insurer have appealed.

The defense was that the deceased was not a workman within the meaning of the act. The first point relied on for reversal is that the court erred in concluding upon the findings that the deceased was a " * * * person who has entered into the employment of or works under contract of service or apprenticeship, with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business." Comp. St. 1929, § 156-112 (i).

Under definitions of the same import it is often a difficult question whether the injured person was an employee or a so-called "independent contractor." Such is the question now to be determined upon the following findings made at the request of appellants:

"1. That Burruss' stipulated hauling for the BMC Logging Company (hereinafter called the company) was part of the latter's operations under a contract with the New Mexico Lumber and Timber Company, whereby the Logging Company was to cut timber for designated areas in the vicinity of Porter, Sandoval County, New Mexico, and to remove the same to within a designated distance of the tracks of a certain railroad in that vicinity.

"2. That by day labor the company cut the timber, 'skidded' it into convenient 'loading' or concentration points as its operations progressed, from whence it was hauled by various truckers, of whom Burruss was one, to the railroad.

"3. That Burruss had no written contract with the company, nor were the terms of his engagement—except his rate of compensation —stated orally, but the terms thereof rested upon the practices and usages of the company to which he acquiesced.

"4. That the only compensation to the truckers was a specified rate for each 1,000 timber feet of lumber actually hauled to the railroad for which they furnished the labor of driving, all the equipment—truck and trailer—and operated and maintained the same.

"5. That the company worked several loading points simultaneously, providing at each a loading crew of two men and a team of

horses, and from time to time as its operations progressed, its woods boss directed the various truckers to specified loading points for their loads, respectively; several trucks to each point.

"6. That each truck was loaded by the crew and the trucker working together, taking the logs from the pile as they came.

"7. That the truckers could control the size of their loads.

"8. That there were at times in the company's operations a choice of routes and the truckers had the right of selection.

"9. That the trucker had the right to say, in a given condition of weather, whether or not he would then haul.

"10. That the trucker could refrain or 'lay off' from work at any time he might choose.

"11. That the truckers were not required to work any specified hours.

"12. That the trucker had sole control of the operation of his truck on the road, and of its mechanical condition.

"13. That the trucker could substitute another driver for himself at will.

"14. That the assigning of the various truckers to respective loading points by the woods boss required to coordinate their work to that of the loading crews."

And upon the following findings made at the request of the appellee:

"1. The deceased Burruss in hauling logs for the BMC Logging Company was under the direction of a boss or superintendent; there was no time limited in which he should haul a certain amount of logs; there was no specific area from which the deceased was to haul the logs; the employer BMC Logging Company retained the superintendency of the operations; the deceased was required to take the logs that were given to him and he was directed where to get them and where to deliver them; the logs were loaded on to the truck of the deceased by the employees employed by the BMC Logging Company."

"5. That the deceased Burruss was hauling logs for the defendant BMC Logging Company at a definite price of $2.50 and $3.00 per thousand.

"6. That the defendant BMC Logging Company retained the right to employ and discharge the deceased at its will."

The statute requiring a "contract of service or apprenticeship," there can be little doubt that it is the field of master and servant, not that of employer and independent contractor, that the Workmen's Compensation Act has invaded. Annotation, 43 A. L. R. at pages 336 and 346. And, while there seems to be some difference of conclusion, we now see no reason for considering that the relation existing is to be tested differently in this class of cases than under the common law or under other statutes involving the question. At least appellants contend, and appellee seems to acquiesce, that there is no difference.

If any proposition in connection with this question may be said to be settled, it is that there is no single nor sure criterion. Every case presents its own combination of facts, from which the resultant must be arrived at.

A fact found controlling in one combination may have a minor importance in another. This appears not only from frequent statement, but as the general result of reading the confusing and perhaps conflicting opinions. The selected case series, American Law Reports, has offered many monographs bearing on the question. The "Comment Note," 75 A. L. R. 725, is so much an index of these as to make particular citation here unnecessary.

■ The general distinction between the common-law servant and the statutory workman or employee on the one hand, and the independent contractor on the other, is too well understood to require comment. Often, in a particular case, characteristics of both relations are present. It is in such cases that the question becomes close.

The employee renders personal service. The independent contractor may or may not. In both cases, the employer exercises authority. Beyond doubt the character of such authority or control is the usual and generally accepted test. The result to be achieved by the independent contractor is controlled by the employer. But, when the control descends to the details or to the means and methods of performance, we have a servant or employee. This general test we find variously stated.

"An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed." Annotation, 19 A. L. R. at page 235.

"Generally speaking, an independent contractor is one who exercises an independent employment and contracts to do a piece of work according to his own method, without being subject to the control of the employer, save as to the results of his work." Honnold on Workmen's Compensation, § 66.

"It has been said that 'the test of an independent contractor is that of rendering service in the course of independent occupation, following the employer's desire in results but not in means.'" Schneider, Workmen's Compensation (2d Ed.) § 37.

"The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for." De Palma et al. v. Weinman et al., 15 N. M. 68, 103 P. 782, 785, 24 L. R. A. (N. S.) 423.

Mere suggestions do not count against the status or relation. Nor does that directing control essential to co-ordinate the several parts of a larger undertaking. This is conceded everywhere. And all agree, in statement if not in application, that it is the right to control, not the exercise of it, that furnishes the test.

In able and persuasive briefs and argument, counsel for appellants has made the most of the findings made at his instance. Giving them face value, there appears a large degree of independence of conduct not ordinarily enjoyed by employees. There also appears a large degree of business risk assumed by the deceased and avoided by the employer. It is easy to consider that the deceased was in pursuit of profits, taking the chances of loss. The right to substitute a driver minimizes the element of personal service. We cannot better

sum up the contention than in counsel's own language: "Is there any * * * conceivable state of facts by which Burruss could have hauled these logs where he would be subjected to less control? Obviously not. Therefore, to hold him an employee, is to say that it is impossible for truckers to do such work independently."

It is true that the special facts found disclose little of "superintendence" or of "authoritative control" not recognizable as "mere suggestion as to detail, or necessary cooperation where the work is part of a larger undertaking." Yet we think the trial judge correctly resolved the matter.

In this particular case, the fatal fact, as we see it, is that found at appellee's request, that appellant logging company "retained the right to employ and discharge the deceased at its will." If the deceased had been engaged to do a specific job, having the independence of means and method disclosed by the findings, it might have been a proper conclusion that he was an independent contractor. But his contract was unlimited as to time or result. It was not for any number of days or hauls; not for any specific logs or any designated quantity. From a practical standpoint, the deceased was in a position of complete subservience. His position required obedience to any direction, however minute or unreasonable, on pain of instant termination of the relation, whatever it was.

The relation placed complete *power* of control in the logging company. Its free exercise could not have been resisted nor redressed in damages if it went to the limit of ending the relation. Wherein is there legal distinction between this *power* to control and the *right* to control which counsel agree is the test?

To put the matter somewhat differently, the independence of control of the special findings is imaginary. In so far as there was an express contract, it was merely to "put on" the deceased at log hauling at so much per thousand feet. The claimed independence of control is merely the custom of the woods known to both parties, and hence invoked as a part of the contract. We need not question that these known customs would have entered into a contract with some duration, fixed by time or result. We cannot see how they can form a part of this contract. All independence must end at a word from the employer. It is a matter of sufferance, not of right. The findings really show failure to exercise control, not lack of right.

And so the test invoked by appellants fails to sustain their position. The contract giving the deceased no freedom from control, he is no less an employee or servant because of the independence he actually enjoyed.

Among the numerous decisions cited by appellants, all of which have had consideration, there are some that have resolved the question differently than we do, overlooking or disavowing the decisive effect of the power of instant discharge without legal liability. We have never seen it denied that this feature was one for consideration, and it has been many times found controlling in cases more or less similar to this. A number of such decisions are cited in Re James Murray, 130 Me. 181, 154 A. 352, 75 A. L. R. 720. Such

we think was the real basis of decision in the much-cited case, Tuttle v. Embury-Martin Lumber Company, 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664. See, also, Press Publishing Co. v. Industrial Accident Commission, 190 Cal. 114, 210 P. 820; Thompson v. Twiss, 90 Conn. 444, 97 A. 328, L. R. A. 1916E, 506.

█ Both parties here object to the award. It was based on a holding that the "average weekly earnings" of the deceased were $24. Appellee's objection need not be considered. She took no appeal.

██ This matter was not easily to be determined. In the first place, the contract did not call for, nor the deceased receive, simple wages. The stipulated compensation covered both man hire and truck hire. There must be some segregation. In the second place, the deceased had worked less than one week at the employment in which he met death. So, under the statutory policy, resort must be had to "the average weekly earnings of other workmen engaged in like employment in the same locality during the preceding four weeks." Comp. St. 1929, § 156-112 (m).

It is evident that the strict application of this statutory criterion in a case of this kind will be difficult. The circumstances will differ so greatly as among the "other workmen," and as between each of them and the injured or deceased workman, as to call for many allowances. It might easily be impossible to produce any proof meeting the requirement. The provision is to aid an award, not to prevent one. Even if the court did, as appellants assume, reject all of the evidence as to the earnings of men who were hauling on similar terms, and based the award, as a matter of necessity, on a going wage of $4 per day for truck drivers, we are not prepared to say that the judgment should be reversed.

On the assumption stated, appellants would have us reduce any average weekly earning which the court might have arrived at to seven-twelfths of such amount, because of a finding that the employment was seasonal, or at least intermittent, and would not furnish more than seven months' work per year. Decisions such as State Road Commission v. Industrial Commission, 56 Utah, 252, 190 P. 544, and Andrejwski v. Wolverine Coal Co., 182 Mich. 298, 148 N. W. 684, Ann. Cas. 1916D, 724, are cited. We have no criticism of them, considering the statutes by which they were controlled. Under our statute, the average is not to be taken for the year, but "during the period not exceeding one year during which he (the workman) has been employed." Section 156-112(m).

But the record does not certainly disclose that counsel's assumption is correct. There was evidence of the earnings of four different haulers, covering twelve weeks within the statutory "preceding four weeks." Three of the four had worked for two weeks within the period. Appellants would have us reject the earnings of these three. "During the four weeks preceding" might, but does not necessarily, mean what appellants suggest. It might be impossible to find a single workman who had been employed during the whole period. We think the intent was to fix a limit of four weeks back of which the inquiry need not or should not go.

Findings made might have supported a conclusion that the average weekly earnings of these four men with their trucks was approximately $60, after making allowance for operating cost. There was no evidence as to the going price of leasing or hiring trucks. Probably none could have been produced. It could only have been arrived at by calculating from data. Of course, the fact that truck drivers were paid $4 per day does not itself warrant a finding that the average weekly wage of truck drivers was $24. On the other hand, this daily wage of the person who drove the employer's truck does not necessarily limit the daily wage of the man who drove his own truck. It does, however, furnish some guide for the necessary operation of splitting the $60 or less average weekly pay into truck hire and man hire. There was other evidence of more or less significance, and there were inferences properly to be drawn, so that we cannot say that there is no substantial support for the conclusion.

A week or more after the trial court's opinion had been rendered and filed, appellants moved to reopen the case for further evidence. The motion, of course, invoked discretion. If the denial of it is reviewable at all, a matter we do not consider, no abuse of discretion appears.

In concluding her brief, appellee asks compensation for her attorney additional to $250 allowed below, a request not supported by argument or authority. Appellants have ignored it. It is not certain that the statute contemplates such an allowance. Comp. St. 1929, § 156-122. We are not disposed to establish a precedent in so important a matter,

without aid from counsel. The request will stand denied, with leave to renew it by formal motion supported by brief, within the time allowed for moving a rehearing.

The judgment will be affirmed, and the cause will be remanded. It is so ordered.

HUDSPETH, BICKLEY, and ZINN, JJ., concur.

SADLER, J., did not participate.