146 P.2d 878

**BLAND v. GREENFIELD GIN CO. et al.**

No. 4831.

Supreme Court of New Mexico.

March 10, 1944.

L. O. Fullen, of Roswell, for appellants.

Frazier & Quantius, of Roswell, for appellee.

THREET, Justice.

Appellee, Willie Mae Bland, brought suit under the Workmen's Compensation Act, N.M.S.A. 1941, § 57-901 et seq., for the death of her husband, William Halsey Bland, against appellants, the Greenfield Gin Company, a corporation, and the Maryland Casualty Company, insurer. From a judgment in favor of appellee appellants appeal, assigning errors to-wit:

1. The court erred in its findings of fact Nos. 3 and 4 and refusing to adopt appellants' requested finding of fact No. 5.

2. The court erred in its findings of fact Nos. 1 and 2 and refusing to adopt appellants' requested finding of fact No. 1.

3. The court erred in its findings of fact Nos. 5 and 6.

4. The court erred in refusing to adopt appellants' requested findings of fact Nos. 2, 3 and 4.

5. The court erred in its conclusion of law No. 1 and refusing to adopt appellants' conclusion of law No. 1.

The courts findings of fact and conclusions of law are:

"1. That the death of William Halsey Bland arose out of and in the course of his employment with the Greenfield Gin Company, with the defendant Maryland Casualty Company, a corporation, the insurer.

"2. That at the time of the death of the said William Halsey Bland, he was acting in the course of his employment with the said defendant, Greenfield Gin Company.

"3. That the said William Halsey Bland was not an independent contractor.

"4. That the contract of employment between the said William Halsey Bland and the said Greenfield Gin Company permitted full control of the work by the employer, and that the said decedent entered upon the work of his employment on September 26, 1942 and continued until the time of his death, January 13, 1943, with no regular hours of employment either day or night.

"5. That on the evening of January 13th, 1943, a fire broke out in the gin of the employer which could not be controlled by the employees on duty; that the decedent and others responded to the call for help; and that said decedent was active in fighting said fire, with the full knowledge and approval of the foreman on duty.

"6. That said fire was an emergency and it was necessary for all employees to use every reasonable effort to control it, and while the decedent was fighting said fire he contacted an electric wire which instantly caused his death.

"7. That the decedent left his widow, the plaintiff, and two minor children of the ages of nine and five years, respectively, dependent upon him for support.

"8. That plaintiff's attorney herein should be allowed the sum of $250.00 for their services for the plaintiff in this cause.

"1. That the plaintiff is entitled to a judgment for the benefits of the compensation act for herself and her minor children, as prayed for in her complaint.

"2. That plaintiff is entitled to judgment for attorney fees in the amount of $250.00."

The deceased was engaged in hauling seed for the appellant, Greenfield Gin Company, under an oral contract, and was accidentally killed while helping to extinguish a fire that had broken out in the gin plant. The defense was that the deceased was not a workman within the meaning of the act.

The first point relied upon for reversal is that the court erred in finding that the deceased was an employee of the appellant, Greenfield Gin Company, and not an independent contractor.

Appellant argues that the findings of fact Nos. 3 and 4 are not supported by substantial evidence, but on the contrary the evidence shows that the deceased was an independent contractor. Appellants tendered the following finding of fact, which was refused by the court, to-wit:

5. That decedent was not an employee of the Greenfield Gin Company but was an independent contractor.

The rule, that findings of fact supported by substantial evidence, will not be disturbed by this court is so well established that a citation of authorities is unnecessary. But findings of fact not supported by substantial evidence cannot be sustained and a judgment based thereon is, itself, without support. Manby v. Voorhees, 27 N.M. 511, 203 P. 543; Jones v. Jernigan, 29 N.M. 399, 223 P. 100; Salas v. Olmos, 47 N.M. 409, 143 P.2d 871.

The contract between Greenfield Gin Company and the deceased will determine whether his relationship to the gin company at the time of his death was that of an independent contractor or that of an employee. Since the contract was oral, its terms and conditions must be gleaned from the testimony of S. W. Smith, manager of appellant, Greenfield Gin Company, and from the testimony of James Bland, brother of the deceased. The testimony of each will be summarized as briefly as a clear understanding of the case permits.

The witness, S. W. Smith, was in complete control of the gin company business. He arranged orally with the deceased in July, 1942, to haul all seed for the ginning season of 1942-1943 from the two gins located at Greenfield and Dexter, New Mexico. Whenever necessary, the deceased was to use two trucks in such hauling, primarily his own, and, as the amount of cotton ginned for the season might warrant, the gin company's truck. The deceased was to furnish drivers for both trucks and the gin company and the deceased would pay the operating expenses of the truck furnished by each.

The deceased had the exclusive right to haul all the seed for appellant, Greenfield Gin Company, for the ginning season of 1942–1943, and the seed were to be hauled to Roswell and Otis, New Mexico. The deceased was to be paid for the hauling on a tonnage basis, the price depending on whose truck was used and whether delivery was made at Roswell or Otis. For delivery to Roswell, the deceased would receive forty cents per ton, if the gin company truck was used, and $1.25 per ton if his own truck was used. For the hauling to Otis, the deceased would receive eighty cents per ton for hauling in the company truck and $2.50 per ton for hauling in his own truck.

If extra help was needed in moving the seed, the deceased was to employ and pay for it from the proceeds received for hauling the seed under the terms of his contract. As manager of Greenfield Gin Company, the witness, Smith, had nothing to do with employing or discharging any helpers hired by the deceased. The latter had the right, so long as he kept the seed moving from the gin, to do extra hauling for the gin company and for other people without having to account to the gin company for any of the revenue received from such extra hauling. The gin company had no right to discharge the deceased and the deceased had no right to quit. The latter usually was paid on Saturday nights, based upon the number of tons hauled during the week. On one occasion, when the deceased got behind with

the seed hauling because he had been using his truck to haul cattle, the witness, Smith, asked deceased's permission to put on another truck to help him out. The deceased consented and another driver and truck were employed to haul three or four loads. So much for the terms of the contract and the operation thereunder as testified to by S. W. Smith, manager of the gin company.

James Bland, a witness for appellee, threw further light on the arrangement. He was a brother of the deceased and worked for him in hauling seed. The deceased paid him his wages. Manager Smith did not give him any directions "right out", but if he and his brother got behind with the seed hauling, the manager would become a little uneasy and at one time the manager put on another truck to haul seed for a few days. In hauling the seed, Manager Smith, furnished one truck and the witness' brother furnished one. Each paid the operating expenses of the truck so furnished. When they could not handle any more seed at Roswell, either the witness or his brother, the deceased, would advise Manager Smith, who would direct them to make deliveries at Otis.

The witness, Bland, was not present when Manager Smith and his brother entered into the contract. After his brother's death, he, the witness, took over the contract upon the same basis. The reason another truck was put on the seed haul by the gin company was that he and his brother could not haul all the seed away. He understood the reason his brother was hired was that Manager Smith wanted someone for the entire ginning season. When they caught up with the seed hauling, his brother did independent hauling and retained all the revenue derived therefrom. The gin company paid his brother extra for hauling gin supplies from Roswell and Otis, New Mexico. His brother hired other employees and paid them himself and the gin company had nothing to do with hiring them or laying them off. Manager Smith gave them directions when to deliver seed to Roswell or Otis and occasionally would mention that the seed ought to be cleaned up around the seed house. They had no regular working hours —just worked when they took "the notion to". When the witness was working with his brother prior to the latter's death, they took orders from Manager Smith "when he had any to give". He did give orders "once in a while".

It is true the evidence is rather meager, relative to the terms and conditions of the contract, between the deceased and appellant, Greenfield Gin Company, but we may safely say that the agreement was that the deceased had an exclusive contract to haul all the seed ginned by appellant, Greenfield Gin Company, during the ginning season of 1942 and 1943. He was to be paid on the tonnage basis, the price for hauling depended upon the distance of the haul and whose truck was being used. Each of the contracting parties was to pay the operating expenses of his or its respective truck. The deceased was to furnish drivers for both trucks at his expense and any extra help needed was to be furnished by him and

paid for out of his earnings from the seed haul. Neither party had the right to terminate the contract before the end of the term. The contract provided for the delivery of the seed to two fixed destinations, Roswell and Otis, New Mexico, and the deceased had the privilege of engaging in hauling for other people when his duties as seed hauler would permit, with no obligation to account to appellant, Greenfield Gin Company, for the proceeds therefrom. No regular working hours were required of the deceased in the performance of his contract.

What constitutes an independent contractor, as contra-distinguished from an employee is, often times, difficult to determine. What, in many cases, are considered satisfactory tests, in other cases, under different circumstances, are not satisfactory. For this reason it is manifest that the disposition of each case is controlled by the particular facts of such case. This question has been before this court on several occasions. In Burruss v. B. M. C. Logging Co., 38 N.M. 254, 31 P.2d 263, 264, in commenting upon the general test to be applied in determining whether the relationship of employer and employee, or that of an independent contractor exists, we said:

"The employee renders personal service. The independent contractor may or may not. In both cases, the employer exercises authority. Beyond doubt the character of such authority or control is the usual and generally accepted test. The result to be achieved by the independent contractor is controlled by the employer. But, when the control descends to the details or to the means and methods of performance, we have a servant or employee. This general test we find variously stated.

" 'An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed.' Annotation, 19 A.L.R. at page 235.

" 'Generally speaking, an independent contractor is one who exercises an independent employment and contracts to do a piece of work according to his own method, without being subject to the control of the employer, save as to the results of his work." Honnold on Workmen's Compensation, § 66.

" 'It has been said that "the test of an independent contractor is that of rendering service in the course of independent occupation, following the employer's desire in results but not in means." ' Schneider, Workmen's Compensation (2d Ed.) § 37."

In De Palma et al. v. Weinman et al., 15 N.M. 68, 103 P. 782, 785, 24 L.R.A.,N.S., 423, we said:

"The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for."

In Burruss v. B. M. C. Logging Company, supra, it was held that, the controlling factor militating against the idea that the

claimant was an independent contractor, was the control retained by the logging company to discharge the claimant at will. We said:

"In this particular case, the fatal fact, as we see it, is that found at appellee's request, that appellant logging company 'retained the right to employ and discharge the deceased at its will.' * * * Among the numerous decisions cited by appellants, all of which have had consideration, there are some that have resolved the question differently than we do, overlooking or disavowing the decisive effect of the power of instant discharge without legal liability. We have never seen it denied that this feature was one for consideration, and it has been many times found controlling in cases more or less similar to this. A number of such decisions are cited in Re James Murray, 130 Me. 181, 154 A. 352, 75 A.L.R. 720."

The question was, again, before this court in American Employers' Ins. Co. of Boston, Mass., v. Grabert, 39 N.M. 173, 42 P.2d 1116, 1117. The dominant element, in this case, against the contention that the deceased was an independent contractor, was the unchallenged finding of the trial court that the arrangement could be terminated, at any time, by either claimant, or the mining company, with or without cause, and without either party incurring liability for so doing. The court said:

" * * * The power of instant discharge of the plaintiff by the mining company dominates the elements otherwise sometimes employed as tests to determine the question whether a person in service is an employee or an independent contractor."

In Sucetti v. Jones' Estate, 38 N.M. 327, 32 P.2d 815, the injured workman was held to be an independent contractor upon the following facts:

"The agreement ultimately reached by the parties, and under which appellee was working at the time he was injured, was that plaintiff was to put in 70 feet of tunneling on defendants' claims, at the rate of $7 per foot. The manner in which the agreed number of feet of tunneling, at the particular place designated by defendants, was to be done, was left entirely up to the plaintiff, and defendants never supervised or bossed the job in any way. It was apparently the understanding that plaintiff might hire such help as he might desire, to be paid by him, and plaintiff did, in fact, hire such help during the course of the work. * * * Where the employer's control is limited to the result to be achieved, and he has no right to control the mode of doing the work contracted for, the relationship is that of independent contractor and employer."

In the case at bar, the manner in which the seed were to be hauled to the places designated in the contract, the size of the load, the number of trucks used, the time, either day or night, the deceased should work, the hiring of extra help and the amount of wages paid, was all left entirely to the deceased. Appellant, Greenfield Gin Company, exercised neither supervision nor control of the details of the

work. All the interest it had was in results to be accomplished in keeping the seed moving from the gins to the market.

Appellee places much stress on the fact that appellant, Greenfield Gin Company, gave directions as to where the seed were to be delivered; that the seed should not be allowed to accumulate around the seed house where it had spilled in loading, and the fact that a third party was employed by appellant, Greenfield Gin Company, to haul seed for a short time as showing that the gin company retained the right and did supervise and control the details of the operation. She argues that these facts show a relationship of employer and employee existed between the deceased and appellant, Greenfield Gin Company. To this, we cannot agree. The point of deliveries were provided for in the contract. The seed were to be delivered to the oil mill at Roswell as long as it had facilities to handle them, and the balance were to be delivered at Otis. Deciding when to make deliveries to Roswell and Otis was as much the duty of the deceased as of appellant, Greenfield Gin Company. The capacity of the oil mills to handle the seed had more to do with where and when deliveries were to be made than any order or direction coming from appellant, Greenfield Gin Company.

The fact that, occasionally, when seed had accumulated around the seed house, the deceased was requested to remove them or that appellant, Greenfield Gin Company, employed a third party to haul seed, when the deceased had failed to keep up with the gin-ning, was of no importance. Such requests, and the employment of an extra seed hauler, were for the purpose of avoiding any interruptions in the operation of the gins. This did not affect the manner of performance on the part of the deceased, and constituted no such control as would warrant a finding that the relationship of employer and employee existed, and that the deceased was not an independent contractor.

In Ferguson & Lange Foundry Co. v. Industrial Commission et al., 346 Ill. 632, 179 N.E. 86, 87, the court, in deciding that the claimant there was an independent contractor, said:

"No hours were prescribed within which the defendant in error should work, nor was he required to make any report to the plaintiff in error. When weather conditions were unfavorable he did not work. At times he employed one or more men to assist him. To avoid congestion, the yard manager occasionally requested the defendant in error to remove the dirt and cinders from some particular part of the yard before he gave his attention to other parts of the premises. When he failed to haul the materials away as rapidly as they accumulated, another person in the same business would be engaged to remove the surplus, and he likewise was compensated by the load. When the defendant in error obstructed the driveway to the foundry and he delayed the operations of the company, one of its employees would assist him in loading his wagon. * * *

"To reverse the judgment, it is contended that Schneider, the defendant in error, was

an independent contractor and not an employee of the plaintiff in error. It is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee or as an independent contractor. Ordinarily no single feature of the relation is determinative, but all must be considered together. * * * he employed assistants whenever necessary; he was free to do hauling for others and when ill he substituted another person in his stead. In his arrangement with the foundry company no hours were fixed for the rendition of his service; he began and quit work when he desired; he delivered the waste material to places of his own selection, and when he sold a load of cinders he was neither obliged to report the sale nor to account to the plaintiff in error for it. The foundry company did not concern itself with the details of the work in which the defendant in error was engaged; the time and manner of performance were left to the latter's discretion, and his responsibility to the plaintiff in error was for the result which it sought to obtain. The fact that occasionally, when dirt and cinders had accumulated in the yard of the foundry to a considerable extent, the defendant in error was requested to remove the waste materials from a particular part of the yard before attention was given to another part is inconsequential. Such requests were made to avoid interruption of the foundry company's business;

they did not affect either the manner of performance or the disposition of the materials, and they constituted no such control as would warrant a finding that the relation of master and servant existed. Meredosia Levee & Drainage District v. Industrial Comm., supra [285 Ill. 68, 120 N.E. 516]; Gallagher's Case, 240 Mass. 455, 134 N.E. 344."

There is no substantial evidence to support the trial court's finding that the deceased was not an independent contractor at the time of his death, and that the relationship of employer and employee existed. A consideration of all the facts and circumstances lead to the conclusion that the deceased performed the services of hauling seed free from the control and supervision of the appellant, Greenfield Gin Company. He was an independent contractor at the time of his death and is excluded from the provisions of the Workmen's Compensation Act.

Other questions are presented, but due to the disposition made of the case, it will be unnecessary to consider them.

The judgment will be reversed and the cause remanded with instructions that the case be dismissed and

It is so ordered.

SADLER, C. J., and MABRY, BICKLEY, and BRICE, JJ., concur.