314 P.2d 722

**Andy HUFF, Plaintiff-Appellant,**

**v.**

**M. A. DUNAWAY, d/b/a Dunaway Rig and Transportation Company, Defendant-Appellee,**

**Black, Sivalls & Bryson, Inc., Plaintiff-in-Intervention, Appellant.**

**No. 6219.**

Supreme Court of New Mexico.

Aug. 26, 1957.

122

William J. Heck, Hobbs, for plaintiff-appellant.

Kermit Nash, Hobbs, for intervenor-appellant.

C. M. Neal, Hobbs, for appellee.

SADLER, Justice.

The question for decision is whether the plaintiff-appellant, a regular employee of intervenor-appellant, at the time of the injury complained of, was injured through the negligence of a fellow servant and co-employee working under the supervision, control and for the benefit of plaintiff's employer, the intervenor, at the moment of his injury; or, was the injury occasioned by the negligence of an agent and employee of a defendant whose relationship to intervenor at the time of injury was that of an independent contractor.

The plaintiff's action was grounded on the latter theory, resulting in a directed verdict and judgment of dismissal of plaintiff's complaint in which damages of $50,000 were sought, when all the evidence was in, and the case closed. It is from the judgment so entered against the plaintiff that this appeal is prosecuted by him and his employer, the intervenor, who sought reimbursement by the way of subrogation in any recovery by plaintiff for amounts paid by it to the plaintiff as workmen's compensation on account of his injury.

The plaintiff, a resident of Lea County, New Mexico, had been employed by intervenor, Black, Sivalls & Bryson, Inc., a dealer in oilfield equipment, as a warehouseman and yardman, for approximately five years at time of the accident complained of.

The original defendant, M. A. Dunaway, d/b/a Dunaway Rig and Transportation Company, owned and operated trucks doing hauling for other people. He was what is known as a contract hauler under the regulations of New Mexico Corporation Commission, holding a contract hauler's permit No. 966–1. The truck driver involved, M. A. Dunaway, Jr., was the son of defendant, M. A. Dunaway, and at time of the accident was employed as a truck driver by his father.

On January 19, 1955, Black, Sivalls & Bryson, Inc., intervenor, had occasion to employ a truck and its driver to move some separators and coils from one point in its yard at Hobbs, New Mexico, to another point in the same yard. Intervenor's yard manager, Mr. Walter Slay, called the defendant transportation company and made arrangements for one of its trucks and driver to do the work. Pursuant to the call, the truck and its driver, M. A. Dunaway, Jr., came to the yard of intervenor, Black, Sivalls & Bryson, to do the work.

In the conduct of its business, Black, Sivalls & Bryson, Inc., had frequent

occasion to employ trucks, paying for such use on an hourly basis, whether a full hour was required or not. So it was, as already indicated, that on the morning in question, Mr. Slay called the defendant company for a truck, explaining the work he wished done. In due season, the truck and driver arrived on the premises of Black, Sivalls & Bryson, Inc., and the plaintiff, Huff, pointed out to the driver the items to be moved and where they were to be placed.

Throughout progress of the work, the truck driver remained in the truck, operating it and the winch line which was a part of its equipment. Huff, the plaintiff, would attach, or hook the winch line on the objects to be moved and unhook the winch line when the move was completed. He would signal to the truck driver when the winch line was hooked and signal again when it was unhooked.

The object of the work being done was to move some equipment called coils from where they were stored in the yard and place them in heaters located at another point in the yard. The coils were located behind four objects known as separators. The separators weighed about 2,000 pounds each, consisting of two large chambers, in a position parallel to each other, and joined together by pipes approximately three feet apart. A picture of one of the separators was placed in evidence as an exhibit.

Four of the separators were sitting in front of the coils which were to be moved and, of course, had to be moved out of the way before the coils could be moved. After the coils were placed in the heaters, the four separators were restored to their original positions. When the last of the four separators was put in place, the job was completed.

We take the next paragraph of the opinion following this one from the brief in chief of plaintiff (appellant) to which no exception is taken by the defendant, and about which the parties do not appear to disagree, or to the extent they may, it is in a minor respect unimportant to our determination of the appeal. The statement from plaintiff's brief in chief follows:

The work was performed and the last separator was put back in place. Huff unfastened the winch line and it was dangling between the third and fourth separator. He signalled the winch line was loose and signalled for the truck driver to raise the winch line. Instead of raising the winch line, the truck driver started the truck and began driving away. The hook on the winch line caught on the number 3 separator pulling it over against number 4 separator, and the number 4 separator fell on Huff, the plaintiff. He received a severe injury to his right thigh and right leg and necessitated the expenditure by the intervenor, Black, Sivalls & Bryson, Inc., of $2,121.60 for his medical

expenses. At the time of the accident, the only two men in close proximity to the work, or having anything to do with it, were the truck driver, M. A. Dunaway, Jr., and the plaintiff, Andy Huff.

It should be added that under the contract of employment between Black, Sivalls & Bryson, Inc., the intervenor, and defendant, or the practice followed by the parties under similar arrangements, previously, the contract of employment was subject to a right in the intervenor to terminate the contract at any time with or without cause, the contract not being for any specific amount of work. Though termination of the contract might be without cause, it could not be accomplished without liability to defendant, if it occurred prior to expiration of the full hour of employment on which the parties were engaged at the moment. Furthermore, it should be added the job was not deemed completed, so far as the running of time was concerned, until defendant's truck and driver had checked back into defendant's yard after completing the work on which engaged.

While the parties have presented rather extensive briefs and have cited and reviewed many cases, not alone from our own state but from other states as well, we are well convinced this case is to be governed by a consideration of decisions previously determined by us without the necessity of looking elsewhere for authority. The lead-ing case relied upon by the defendant is that of Dunham v. Billy Walker, 60 N.M. 143, 288 P.2d 684.

Incidentally, counsel for defendant in the case at bar represented the defendant in Dunham v. Billy Walker. He was successful in satisfying both the trial court and this Court in that case that the truck driver of defendant, on the premises of plaintiff's employer with a truck and winch attachment, became a special employee of plaintiff's employer as to the work in hand out of which the injury arose. Hence, he became subject to the Workmen's Compensation Act of New Mexico, 1953 Comp. § 59-10-36 et seq., and could not recover from defendant in a common law action for damages by reason of such injury.

The facts in the two cases are very closely akin and yet not so close, we think, as to make Dunham v. Billy Walker, supra, decisive of this case, as we shall presently show. Certain distinguishing features between the two cases are pointed out by counsel for plaintiff, among others, as follows:

(1) In the cited case, both employers were engaged in the same business, that of trucking.

(2) The work for which the Howard Holmes Company had hired the Walker Trucking Company had been completed and the Walker driver had started to leave the yard when he was called

back by the Howard Holmes foreman to assist in some other work. Therefore, if there had been a contract between Howard Holmes Drilling Company and Billy Walker Company that contract was completed and the Billy Walker driver entered into a completely new job.

(3) The work being done was entirely the work of Howard Holmes Company.

(4) *This particular driver entered into the work at the specific request of the Howard Holmes foreman, who was present and in charge of the work throughout.* (Emphasis ours.)

It is the factor mentioned in paragraph No. 4, next above, that to our minds stresses the most significant difference between the two cases. The employment in Dunham v. Billy Walker takes on the character of a "borrowing" by the Holmes Drilling Company of an employee of Walker to assist in a work foreign to the engagement that had brought him there. This factor injects an element of choice, or voluntariness, on the part of the "borrowed" employee, so desirable in a transaction of this kind, and wholly absent in the case at bar.

The same is true of Weese v. Stoddard, 63 N.M. 20, 312 P.2d 545, recently decided. There, too, we find present something in the nature of a loan by defendants to another employer one of its employees for the purpose of assisting that other person, or association, in work being carried on by the latter. The factor mentioned, presence of a loan by one employer to another of one of the former's employees to assist the latter in the work in hand, influenced the result in Jones v. George F. Getty Oil Co., 10 Cir., 92 F.2d 255, a case upon which we relied in reaching the result we did in Dunham v. Billy Walker.

We have several cases in New Mexico dealing at some length with the question of whether and when an employer takes on the character of an independent contractor. See Burruss v. B. M. C. Logging Co., 38 N.M. 254, 31 P.2d 263; American Employers' Ins. Co. of Boston, Mass. v. Grabert, 39 N.M. 173, 42 P.2d 1116, and Bland v. Greenfield Gin Co., 48 N.M. 166, 146 P.2d 878, 881. In the latter case, we said:

"What constitutes an independent contractor, as contra-distinguished from an employee is, often times, difficult to determine. What, in many cases, are considered satisfactory tests, in other cases, under different circumstances, are not satisfactory. For this reason it is manifest that the disposition of each case is controlled by the particular facts of such case. This question has been before this court on several occasions. In Burruss v. B. M. C. Logging Co., 38 N.M. 254,

126

31 P.2d 263, 264, in commenting upon the general test to be applied in determining whether the relationship of employer and employee, or that of an independent contractor exists, we said:

" 'The employee renders personal service. The independent contractor may or may not. In both cases, the employer exercises authority. Beyond doubt the character of such authority or control is the usual and generally accepted test. The result to be achieved by the independent contractor is controlled by the employer. But, when the control descends to the details or to the means and methods of performance, we have a servant or employee. This general test we find variously stated.

" ' "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed." Annotation, 19 A.L.R. at page 235.

" ' "Generally speaking, an independent contractor is one who exercises an independent employment and contracts to do a piece of work according to his own method, without being subject to the control of the employer, save as to the results of his work." Honnold on Workmen's Compensation, § 66.

" ' "It has been said that 'the test of an independent contractor is that of rendering service in the course of independent occupation, following the employer's desire in results but not in means.' " Schneider, Workmen's Compensation (2d Ed.) § 37.'

" ' "In De Palma v. Weinman, 15 N.M. 68, 103 P. 782, 785, 24 L.R.A., N.S., 423, we said:

" 'The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for.'

" ' "In Burruss v. B. M. C. Logging Co., supra, it was held that, the controlling factor militating against the idea that the claimant was an independent contractor, was the control retained by the logging company to discharge the claimant at will. We said:

" 'In this particular case, the fatal fact, as we see it, is that found at appellee's request, that appellant logging company "retained the right to employ and discharge the deceased at its will". * * * Among the numerous decisions cited by appellants, all of which have had consideration, there are some that have resolved the question differently than we do, overlooking or disavowing the decisive effect of the

power of instant discharge without legal liability. We have never seen it denied that this feature was one for consideration, and it has been many times found controlling in cases more or less similar to this. A number of such decisions are cited in Re Murray, 130 Me. 181, 154 A. 352, 75 A.L.R. 720.'

"The question was, again, before this court in American Employers' Ins. Co. of Boston, Mass., v. Grabert, 39 N.M. 173, 42 P.2d 1116, 1117. The dominant element, in this case, against the contention that the deceased was an independent contractor, was the unchallenged finding of the trial court that the arrangement could be terminated, at any time, by either claimant, or the mining company, with or without cause, and without either party incurring liability for so doing. The court said:

" '* * * The power of instant discharge of the plaintiff by the mining company dominates the elements otherwise sometimes employed as tests to determine the question whether a person in service is an employee or an independent contractor.' "

What is so well said in the Bland case, just quoted from, is peculiarly applicable here, namely, what in many cases are considered satisfactory tests, in other cases and under different circumstances, are not satisfactory. So the court concludes:

"For this reason it is manifest that the disposition of each case is controlled by the particular facts of such case."

In the case at bar, even if the relationship of fellow-servant existed throughout the work on which they were engaged,—to say the least, an issuable fact for determination by the jury,—the relationship out of which plaintiff's status as such arose, had been completed at moment of the accident (or whether it had been was itself, likewise, issuable before the jury), and no longer existed. The plaintiff himself testified:

"Q. Mr. Huff, at the time that— after the 4th separator had been placed back in its original position was the work that the defendant company, Dunaway, was doing completed? A. Yes, sir.

"Q. Was there any more work for him to do there in the yard? A. No, sir.

"Q. As I understand it, he was driving away when this happened? A. Yes, sir."

We think the evidence in this case, if not sufficient for the court to say as a matter of law the defendant was an independent contractor (and we are almost persuaded it is), abundantly suffices to take the case to the jury on the issue whether defendant was such. The inter-

venor, Black, Sivalls & Bryson, Inc., dealt solely in oilfield equipment. They were neither in the trucking business, and if they ever owned a truck the evidence fails to show it. It is an undisputed fact that M. A. Dunaway was in the contract hauling and transportation business, being licensed as such. Likewise, it was an undisputed fact that the truck involved was owned by defendant and that M. A. Dunaway, Jr., his employee, was the truck driver, working for the defendant, and at the time and place in question was operating defendant's truck for the defendant.

On the other hand, the evidence disclosed the plaintiff, Andy Huff, was a long time employee of Black, Sivalls & Bryson, Inc., and was a warehouseman and yardman and not a truck driver. Actually, all he did, as the evidence discloses, was to show the truck driver where the articles to be moved were located when they were to be moved, and attend to the hooking and unhooking of the winch line for the convenience of the truck driver.

The truck driver, M. A. Dunaway, Jr., came to intervenor's yard at direction of his employer, the defendant, and at all times after arriving there he bore the responsibility of operating the truck and equipment in performance of the contract made by his employer, the defendant, and when finished to return his truck and equipment to his employer's yard. His was a routine performance of his regular duty in the regular course of business of his regular employer. It is difficult to make of him a special employee of Black, Sivalls & Bryson, Inc., except by a species of impressment approaching an act of conscription.

We are well convinced this was not a case calling upon the court to make a declaration of law that the defendant's truck driver was a special employee of Black, Sivalls & Bryson, Inc. There is ample evidence in the record to warrant a finding by the jury that the truck driver, Dunaway, Jr., remained an employee of defendant throughout the work on which he was engaged—in other words, that defendant was an independent contractor. If the facts here present fail to support such an inference, it is difficult to visualize any defendant who, before completing an engagement assumed by him, would not find his truck drivers, and other employees assisting them, converted into special employees of the party engaging defendant, by operation of a species of involuntary peonage abhorrent to the American heritage of freedom to contract one's time and services as one chooses.

It follows from what has been said that the judgment is erroneous and should be reversed, the cause remanded with a direction to the trial court to set aside its judgment and award plaintiff a new trial.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON, and KIKER, JJ., concur.