412 P.2d 555

Mrs. Felipe ROYBAL, Plaintiff-Appellant,

v.

BATES LUMBER COMPANY, Inc., a New Mexico corporation, United States Fidelity and Guaranty Company, an Ohio corporation, Licensed to do business within the State of New Mexico, Defendants-Appellees.

No. 7669.

Supreme Court of New Mexico.

March 28, 1966.

Patricio S. Sanchez, Santa Fe, for appellant.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellees.

COMPTON, Justice.

The widow of Felipe Roybal, deceased, on behalf of herself and decedent's minor children, instituted this action against Bates Lumber Company, hereinafter referred to as Bates, and Apache, Inc., hereinafter referred to as Apache, as employers, and United States Fidelity and Guaranty Company, hereinafter referred to as insurer, to recover workmen's compensation benefits for the death of the decedent allegedly arising out of and in the course of his employment. At the trial Apache was dismissed as a party to the action and the cause was prosecuted against Bates and insurer. The trial court found that at the time of his death the decedent was an employee of Apache, an independent contractor, and that he was not employed by Bates nor covered by any workmen's compensation insurance issued to Bates by insurer. Judgment was entered accordingly and the plaintiff appeals.

In 1956 Bates entered into a timber sale contract with the United States Forest Service for the removal and sale of timber in Carson National Forest near Penasco, Taos County, New Mexico, known as the Trampas Unit. Bates owned a sawmill near the area where the cut timber was rough milled before being transported to its lumber yard in Albuquerque. In March, 1959, Bates entered into an option agreement with one Frank Cofmann, or his assigns, whereby Cofmann would lease the sawmill and take over the operations under the timber contract. The option was exercised by Cofmann in April, 1959. Shortly thereafter, Apache, specifically mentioned in the option agreement as an assignee, took possession of the mill from Cofmann and commenced logging operations.

It is the appellant's first contention that the option agreement, as well as the conduct of the parties, shows that the decedent was an employee of Bates as a matter of law. She contends further that regardless of the relationship between Bates and Apache the policy issued by insurer to Bates specifically covered employees of Apache at the Trampas Unit. We disagree.

The nature of the relationship between Bates and Apache was a matter of law to be determined by the court from the facts. Nelson v. Eidal Trailer Co., 58 N.M. 314, 270 P.2d 720; Latta v. Harvey, 67 N.M. 72, 352 P.2d 649. And if the court's findings have substantial support in the evidence, the conclusions reached are correct, and the judgment must be affirmed.

The decedent was hired by Apache as a laborer and tree cutter. On September 1, 1959, he was crushed beneath a tree he was cutting and died within a few hours. Contrary to the terms of the option agreement, Apache did not carry workmen's compensation insurance. On September 4, 1959, three days after the fatal accident, by agreement between Bates and Apache, the logging operations arising out of the exercise of the option agreement were terminated and an accounting had between the parties. The termination agreement specifically exempted therefrom any claims arising from Apache's failure to provide the insurance called for in the option agreement.

In determining whether one is or is not an independent contractor this court has adhered to the general doctrine that the principal consideration is the right to control. The relationship of master and servant or employer and employee usually results where there is control over physical details such as the manner and method of performance of a contract. On the other hand, where control is limited to the ultimate results to be achieved under the contract the relationship is usually that of independent contractor. Burruss v. B. M. C. Logging Co., 38 N.M. 254, 31 P.2d 263; Sucetti v. Jones' Estate, 38 N.M. 327, 32 P.2d 815; Bland v. Greenfield Gin Co., 48 N.M. 166, 146 P.2d 878; Nelson v. Eidal Trailer Co., supra; Huff v. Dunaway, 63 N.M. 121, 314 P.2d 722; Latta v. Harvey, supra; Campbell v. Smith, 68 N.M. 373, 362 P.2d 523; Romero v. Shelton, 70 N.M. 425, 374 P.2d 301; Shaver v. Bell, 74 N.M. 700, 397 P.2d 723; and Jaramillo v. Thomas, 75 N.M. 612, 409 P.2d 131. In Burruss v. B. M. C. Logging Co., supra, we said:

"The employee renders personal service. The independent contractor may or may not. In both cases, the employer exercises authority. Beyond doubt the character of such authority or control is the usual and generally accepted test. The result to be achieved by the independent contractor is controlled by the employer. But, when the control descends to the details or to the means and methods of performance, we have a servant or employee. * * * *"

The option agreement under which Apache conducted the logging operations required that it maintain and keep in repair the sawmill and compensate Bates for its

use; that all timber and milled lumber remain the property of Bates and that Apache's work be paid for at the rate of $39.50 per thousand board feet; that Apache be familiar, and comply in all respects, with the provisions of the Forest Service timber sale contract to the satisfaction of the Forest Service and of Bates. In this connection, it was provided that the agreement would terminate and Bates be held harmless in the event of Apache's failure to correct within a reasonable time any defects brought to its attention by Bates on the complaint of the Forest Service. The agreement specifically provided that Apache secure fire insurance coverage on the mill and compensation insurance to cover its employees, and to hold Bates harmless from all such claims. In addition, modification of the agreement was expressly prohibited unless reduced to writing and executed by the parties thereto.

The court found that there had been no modification of the option agreement as provided therein; that it could only be terminated by Bates upon Apache's failure to comply with its terms and not at will, and that Bates did not have power or authority to direct or control the means, methods or details of the work being done by Apache.

There is no evidence that Bates sought to exercise any such control over the logging operations or that visits to the site made on its behalf were for any purpose other than to ascertain that the terms of the option agreement and Forest Service contract were being complied with by Apache. As previously pointed out, supervision relating to results contracted to be accomplished does not transform the relationship of employer-independent contractor to that of employer-employee. See Kimball v. Industrial Accident Board, 138 Mont. 445, 357 P.2d 688; Alexander-Bland Lumber Co. v. Jenkins, 87 Ga.App. 678, 75 S.E.2d 355; and Hanchey v. Consolidated Underwriters, 2d Cir. Ct.App.La., 43 So.2d 487.

It is clear that during the period covering decedent's employment and fatal accident, Apache hired and fired its own employees, including the decedent, determined the hours and extent of their work and rate of pay, paid their wages from which it withheld income tax and filed W–2 tax withholding forms. No officer of Apache was on Bates' payroll.

As we view it, all of the findings essential to support the conclusion that Apache was an independent contractor are supported by substantial evidence as well as the conclusion that decedent was an employee of Apache. This being true, it is unnecessary for us to consider the appellant's contention that the decedent was a workman entitled to compensation within the provisions of § 59–10–12(*o*), N.M.S.A., 1953 Comp., which expressly excludes independent contractors.

The appellant next complains of the trial court's finding that Apache was not covered by the policy of workmen's compensation insurance issued by insurer to Bates, and in concluding that the policy of insurance did not extend to or cover the decedent or other employees of Apache.

The policy in question was issued by insurer to Bates for the period September 3, 1958 to September 3, 1959, and covered all usual workplaces of the insured including Albuquerque and Penasco, New Mexico. It was issued prior to the execution of the option agreement between Bates and Apache. In July, 1959, endorsement No. 5 was attached to the policy providing for an additional classification, as follows:

"Logging or Lumbering—including transportation of logs to mill, construction, operation, maintenance or extension of logging roads or logging railroads, drivers."

The testimony of the insurer's general manager was that the additional classification covered all logging and lumbering operations in which Bates might be engaged in the state, and came about as the result of a routine inspection visit of insurer's safety engineer whose report reads, in part, as follows:

"At the time of the writer's visit, it was learned that the insured is now engaged in a logging and lumbering operation, both in selling, lumbering and topping out trees, skidding them to a mill on timbering land leased from the U. S. Forest Service and the Cochiti Indian Reservation. * * *"

The same general manager, however, further testified that in January, 1960, it was determined from the records of Bates that the logging and lumbering operations at Penasco were not done by Bates but by an independent contractor. Thereupon, a refund was made to Bates for the premiums previously paid thereunder.

Appellant argues that the striking of the classification after decedent's death was an attempt by the insurer to eliminate its legal obligations under its policy which was in full force and effect at the time decedent was killed. In this connection she relies on Jernigan v. New Amsterdam Casualty Company, 69 N.M. 336, 367 P.2d 519, for the proposition that insurer must respond to its obligations under the insurance contract. That case is distinguishable on the facts. Here, there is no evidence that it was the intention of Bates or insurer to cover the employees of Apache or that any premiums were collected by Bates for such purpose. Nor was Apache named in the policy as an insured. To the contrary, the agreement between the parties, the evidence of their operations thereunder at the time in question, as well as the uncontradicted testimony relating to the intended insurance coverage, lead to a totally different conclusion. The

evidence is substantial and supports the court's findings on this issue.

In view of our determination that the trial court properly found that the decedent was not an employee of Bates, nor covered by any compensation insurance issued to it, we find it unnecessary to consider other points raised relating to notice and wages.

The judgment should be affirmed. It is so ordered.

CHAVEZ and MOISE, JJ., concur.