553 P.2d 716

James R. BURTON, Plaintiff-Appellant,

v.

CRAWFORD AND COMPANY, Insurance Adjustors, Inc., and Michigan Mutual Liability Insurance Company, Defendants-Appellees.

No. 2136.

Court of Appeals of New Mexico.

July 27, 1976.

Certiorari Denied Aug. 30, 1976.

William H. Carpenter, Albuquerque, for plaintiff-appellant.

Pat Sheehan, Timothy M. Sheehan, Sheehan & Sheehan, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Plaintiff, a licensed independent insurance adjuster, appeals an adverse summary judgment which denied plaintiff's claim for workmen's compensation on the grounds that plaintiff was an independent contractor and not an employee of defendant Crawford and Company. We affirm.

*Facts*

At the time of the injury, plaintiff was licensed under "An act relating to insurance adjusters." Section 58–24–1, et seq., N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1975 Supp.). In the insurance field, he was called a "storm trooper", one who specializes in catastrophy adjusting, such as claims arising out of structural damage caused by hail, wind and tornado. When plaintiff finished one storm claim for an adjustment firm like defendant Crawford and Company, he would wait for another storm claim engagement to arise.

Plaintiff's business address was his home. He wrote his reports, or had his wife type them up.

As a storm trooper, plaintiff worked on a storm claim for Crawford and Company on a fee basis, and this was his first assignment. He was to receive 60% of the claims which he adjusted, plus expenses. He was paid when the bills were made up, and paid his own personal expenses. His time, his work, and the equipment used to investigate the claim were all his own. He was not paid any wages or salary, was not on the payroll of the adjustment firm, and he was not subject to any deduction for withholding tax or social security. Crawford and Company did not tell him how to execute an assignment, and he alone managed the method and procedure in the investigation and report of a storm claim. If plaintiff was overloaded with storm claims, he had the right to refuse to take

any other claims. Plaintiff could be fired at any time.

Crawford and Company furnished plaintiff the claim forms and a billing schedule used to prepare a report and proof of loss. The supervisor of Crawford and Company would review his individual files for errors or mistakes to determine if readjustment was necessary.

Prior to the injury, plaintiff was employed as a full time staff adjuster by Crawford and Company. This employment terminated about April 10, 1973 because plaintiff wanted to return to catastrophy adjusting. Around April 26, 1973, Crawford and Company engaged plaintiff to adjust a storm claim in Clovis, New Mexico. While working on the roof of a home, during completion of his second risk claim, he was blown off and injured.

A. *Plaintiff was an independent contractor.*

Section 58–24–1(1), (2), (3) reads:

1. "Adjuster" means any person, association of persons, partnership, or corporation who or which investigates or adjusts losses or claims arising under insurance contracts on behalf of an insurance company or self insurer, for a fee, commission, or other compensation.

2. "Staff adjuster" means an adjuster who is a salaried employee of an insurance company, representing the interest and adjusting claims, for insurance company solely under policies issued by his employer insurance company.

3. "Independent adjuster" means every adjuster not a staff adjuster, and includes agents and employees of an adjuster.

Section 58–24–9 reads:

*Principal place of business.*—Every licensed adjuster shall have and maintain in this state a principal place of business easily accessible to the public. Such principal place of business shall be that wherein the adjuster principally conducts transactions under his license. The address of his principal place of business

shall appear on all license applications and on all licenses. Licensees shall promptly notify the superintendent of insurance of any change of address of their principal place of business.

Section 58–24–10 reads:

*Powers conferred by adjusters' licenses.*—Independent adjusters shall have power to investigate, settle, adjust, and report to their principals upon claims adjusted on behalf of an insurance company or self insured, and they shall have such additional powers as may be conferred upon them by the party or parties they represent. Staff adjusters shall have only those powers granted to them by their employers. Temporary adjusters shall have the powers of their employers, subject to extension or limitation by contract.

Cases have not been cited, and none have been found, which relate "independent adjusters" to the Workmen's Compensation Act.

A "workman" is defined by § 59–10–12.9, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1). It reads:

*Workman.*—As used in the Workmen's Compensation Act [59–10–1 to 59–10–37], unless the context otherwise requires, *"workman" means any person who has entered into the employment of or works under contract of service or apprenticeship, with an employer,* except a person whose employment is purely casual *and not for the purpose of the employer's trade or business.* The term "workman" shall include "employee" and shall include the singular and plural of both sex. [Emphasis added].

Section 59–10–12.15 defines work by a contractor procured by an employer. It reads:

*Work not casual employment.*—As used in the Workmen's Compensation Act [59–10–1 to 59–10–37], unless the context otherwise requires, *where any employer procures any work to be done wholly or in part for him, by a contrac-*tor other than an independent contractor, *and the work so procured to be done is a part or process in the trade or business or undertaking of such employer,* then such employer shall be liable to pay all compensation under the Workmen's Compensation Act to the same extent as if the work were done without the intervention of such contractor. And the work so procured to be done shall not be construed to be "casual employment." [Emphasis added].

Is plaintiff a "workman" or "a contractor other than an independent contractor"? We believe that he is neither.

To determine whether an employee is an independent contractor, we have approached the result from three different avenues.

(1) *The conventional relationship is not controlling.*

From 1937 to the present time we have said that "The words 'employer and employee' as used in the New Mexico Workman's Compensation Act are used in their natural sense and intended to describe the conventional relation between an employer who pays wages to an employee for his labor." *Mendoza v. Gallup Southwestern Coal Co.,* 41 N.M. 161, 165–66, 66 P.2d 426, 429 (1937); *Lasater v. Home Oil Company,* 83 N.M. 567, 569, 494 P.2d 980 (Ct. App.1972).

This concept is applicable when it is necessary to determine whether an employee has earned wages to come within the Workmen's Compensation Act. Plaintiff was paid a fee, rather than wages for his labor. We hold that plaintiff, in the instant case, is not governed by the conventional relationship between employer and employee.

(2) *The right to employ and discharge at will ordinarily creates an employer-employee relationship.*

Crawford and Company had the right to employ and discharge plaintiff at will. Ordinarily, this creates an employer-employee relationship. *Burruss v. B. M.*

C. *Logging Co.*, 38 N.M. 254, 31 P.2d 263 (1934); *American Employers' Ins. Co. of Boston, Mass. v. Grabert*, 39 N.M. 173, 42 P.2d 1116 (1935); *Abbott v. Donathon*, 86 N.M. 477, 525 P.2d 404 (Ct.App.1974).

In *Bland v. Greenfield Gin Co.*, 48 N.M. 166, 146 P.2d 878 (1944), and *Nelson v. Eidal Trailer Co.*, 58 N.M. 314, 270 P.2d 720 (1954), the right of termination was not considered.

In *American Employers' Ins. Co.*, supra, the Court said:

> This power of the employer to terminate the arrangement carried with it the power to coerce the claimant into an obedience to direction to load into designated cars and to employ only such helpers or assistants as were agreeable and satisfactory to the mining company, *and to employ the method and manner of loading suitable to the company.* [39 N. M. at 175, 42 P.2d at 1117] [Emphasis added].

■ The right to terminate gave the employer the right to control the details of the work. This is the primary test to determine employment status. *Perea v. Board of Torrance, County Commissioners,* 77 N.M. 543, 425 P.2d 308 (1967); *Candelaria v. Board of County Commissioners,* 77 N.M. 458, 423 P.2d 982 (1967); *Bland v. Greenfield Gin Co.*, supra; *Burruss v. B. M. C. Logging Co.*, supra.

> (3) *Under the "relative nature of the work" concept, the right to terminate rule is not applicable to an independent contractor on a single job engagement.*

In *Burruss,* supra, deceased was a truck driver engaged by a logging company to haul logs to a railroad. The Court said:

> If the deceased had been engaged to do a specific job, having the independence of means and method disclosed by the findings, it might have been a proper conclusion that he was an independent contractor. [38 N.M. at 258, 31 P.2d at 265].

■ This dictum creates the problem in the instant case. It is a matter of first impression in New Mexico. To resolve this problem, plaintiff suggested that we turn to the "relative nature of the work" concept, created by Arthur Larson, a leading explicator of workmen's compensation law, and found in 1A Larson's Workmen's Compensation Law, § 45.00 (1973):

> The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service.

This concept is applied when an employer subcontracts out portions of his production and distribution process in peripheral areas such as obtaining raw materials, trucking, delivery and selling. In 1934, New Mexico adopted this concept. *Burruss,* supra; 1A Larson's supra, § 45.22 at pp. 8–94, 8–95.

New Mexico "subcontract" cases, supra, involve continuous services rendered by an employee to an employer. We are now confronted with a single specific job engagement in which an employer engages an independent adjuster to complete one specific job—the investigation, report and proof of loss of a storm claim in which each insured seeks payment for damages sustained. A storm claim is intermittent in nature and arises from time to time as the weather violently attacks a structure.

■ In the determination of employment, New Mexico has always referred to its primary test as the right of the employer to control the details of the work of the employee. When the control of the employer is limited to the ultimate results to be achieved under the contract relationship, the person engaged is an independent contractor. *Roybal v. Bates Lumber Company,* 76 N.M. 127, 412 P.2d 555 (1966).

■ The "right to control" test, however, when applied to the controversial struggle in the courts over the meaning of

"employee" and "independent contractor", has lost its precision. The "right to control" test borders on shadowy edges in application. It has been subject to criticism in *Larson,* supra, and those jurisdictions which follow *Larson.* *Searfus v. Northern Gas Company,* 472 P.2d 966, 969 (Alaska 1970) says:

> In our view, such an approach employs too narrow a criterion for determination of employee status in light of the rationale of compensation acts.

This view leads us to believe that in this case, as in *Burruss,* supra, the "relative nature of the work" test is the better method to use in the determination of plaintiff's status.

■ The *Larson* test was adopted in Alaska. *Ostrem v. Alaska Workmen's Compensation Board,* 511 P.2d 1061 (Alaska 1973). It was outlined as follows:

> The "relative nature of the work" test has two parts: first, the character of the claimant's work or business; and second, the relationship of the claimant's work or business to the purported employer's business. Larson urges consideration of three factors as to each of these two parts. With reference to the character of claimant's work or business the factors are: (a) the degree of skill involved; (b) the degree to which it is a separate calling or business; and (c) the extent to which it can be expected to carry its own accident burden. The relationship of the claimant's work or business to the purported employer's business requires consideration of; (a) the extent to which claimant's work is a regular part of the employer's regular work; (b) whether claimant's work is continuous or intermittent; and (c) whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting

for the completion of the particular job. [511 P.2d at 1063].

This test was applied to a claimant under factual circumstances similar to those of plaintiff. Claimant had an Alaskan business license but no shop of his own. He was engaged in a single venture—to install certain equipment. He performed work requiring a high degree of skill, established his own rate of pay and his own minimum hours. This job entailed about 40–50 working hours. "[H]e was paid on what is referred to as a 'portal to portal' basis at the rate of $10 per hour with a minimum of 12 hours per day, plus room, board and travel expenses. On such jobs, Ostrem was normally paid after submitting an invoice. He supplied his own tools, except for one of a specialized nature for the particular machine, which was supplied by [the employer]." [511 P.2d at 1062].

The claimant was held to be an independent contractor under the *Larson* test because (1) claimant was engaged in a separate calling or business; (2) claimant's work was not a regular part of the employer's regular work; (3) claimant's work was intermittent, not continuous; (4) claimant was engaged "for the installation of a single engine in a loader, a job that would take at most a few days. He was thus engaged for the completion of a particular job." [511 P.2d at 1064].

We believe plaintiff falls within the periphery of the *Ostrem* case. He was an independent contractor under the *Larson* test. We can find no genuine issue of material fact upon which to reverse the summary judgment.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., concurs in result only.

LOPEZ, J., concurs.